[No. 20349. In Bank. — May 29, 1888.]

## THE PEOPLE, RESPONDENT, *v.* ALEXANDER GOLD-ENSON, APPELLANT.

CRIMINAL LAW — HOMICIDE — CHANGE OF VENUE — DISCRETION — APPEAL. — It is ground for a change of the place of trial of a prisoner accused of homicide when, at the time of trial, the public mind is wrought into frenzy against the accused, and the public press sustains enraged citizens in unlawful attempts to overcome the officers of the law, whose superior force alone prevents mob execution. But where such facts existed only during a few days after the homicide, and the public excitement does not prevail at the time of the application for change of venue, the application is addressed to the sound discretion of the court; and the appellate court will not interfere unless the record shows a clear case of abuse of discretion.

ID. — CONDITIONAL ORDER REFUSING CHANGE OF VENUE. — If a motion for change of venue on the ground that a fair and impartial trial cannot be had is denied conditionally or temporarily, with leave to renew the application, and a jury is not impaneled until after the lapse of a time, during which great changes might occur in public opinion touching the guilt of the defendant, it is the duty of the defense to renew the application at the time suggested by the court, and if it is not renewed, the order denying the application will not be disturbed.

ID. — CONTINUANCE — PROOF OF INSANITY — APPEAL — ERROR WITHOUT PREJUDICE. — The absence of depositions to prove insanity of the defendant's grandfather upon a trial for homicide is not a ground on which an order denying a continuance will be reversed, when the record on the appeal shows that the fact of such insanity was not denied, but was established by uncontroverted evidence, so that the defendant could not have been prejudiced by the absence of the depositions.

ID. — ABSENCE OF ATTORNEY. — The absence of one of the defendant's counsel, who is engaged in trying a civil case in which he became employed after the criminal case had been set for trial, is no ground of continuance. Absence of an attorney of record who is in attendance upon a session of the legislature is no ground for a continuance, under section 595 of the Code of Civil Procedure, unless it appears that his engagement as attorney was made before the commencement of the session of the legislature.

ID. — APPOINTMENT OF ATTORNEY BY COURT. — The court may appoint attorneys for a defendant accused of homicide, who makes a defense upon the ground of insanity, when the counsel engaged by him are absent from the trial, and he declines to choose any others.

ID. — MOTION TO SET ASIDE INDICTMENT — GRAND JURY. — Irregularities in the formation of a grand jury cannot be considered on motion to set aside the indictment. Such motion can be addressed only to irregularities in the proceedings of the grand jury. Nor is it ground for a motion to set aside the indictment that the grand jury investigated the charge without notice to the defendant, or giving him an opportunity to be heard, or to have witnesses examined before them.

ID. — EXAMINATION BEFORE COMMITTING MAGISTRATE. — An examination before a committing magistrate is only required to precede an information, and does not apply in cases of indictment, and its absense is not ground for motion to set aside an indictment.

AMENDMENT — RETURN OF SERVICE. — The court may properly direct its officers to amend a return of service so as to conform to the facts.

CRIMINAL LAW — JURY — CHALLENGE TO PANEL. — The court may properly disallow a challenge to a panel of jurors specially summoned, for bias of the sheriff and his deputies, when their examination shows that there is no foundation in fact for the charge. A challenge to the entire panel of trial jurors will not be reviewed when the transcript does not disclose any evidence offered in support thereof.

ID. — CHALLENGES TO JURORS — CONSCIENTIOUS SCRUPLES — FURTHER EXAMINATION. — The court may refuse to allow further examination of jurors who express conscientious scruples against conviction, when the penalty is death, after becoming satisfied that such opinions existed.

ID. — ACTUAL BIAS OF JURORS. — BILL OF EXCEPTIONS. — The decision of the court, upon a challenge to a juror for actual bias, is final upon the question of fact. Evidence given by the jurors when examined upon their *voire dire* may be excluded from the bill of exceptions, unless exceptions are reserved to the ruling of the court, on the admission or rejection of evidence on the trial of the challenge.

ID. — PEREMPTORY CHALLENGES — APPEAL — ERROR WITHOUT PREJUDICE. — When the defendant exercises all the peremptory challenges to which the statute entitles him, he is not prejudiced by the failure of the court to notify him that if he intends to challenge an individual juror, he must do it before he is sworn, as provided by section 1066 of the Penal Code.

ID. — RETRIAL OF CHALLENGES. — The court may properly deny the defendant's motion for a retrial of certain challenges after the jury is completed and sworn to try the case.

ID. — ARRAIGNMENT — COPY OF INDICTMENT. — If the defendant receives a copy of the indictment upon his arraignment, the court is not bound to supply his counsel with a second copy.

ID. — EVIDENCE — IDENTIFICATION OF PRISONER. — An order of court compelling the prisoner to stand up for identification before the jury, by a witness who has already referred to him in his testimony as "this young man," is proper, and does not compel the defendant to become a witness against himself.

ID. — TRIAL — OPENING STATEMENT. — The court may properly direct counsel for the defendant in his opening statement to cease reflecting on the action of the court in refusing a continuance; and may properly refuse to allow him therein to refer to other cases or to read law in illustration of his argument; and may require him to confine himself to a statement of the facts, the effect thereof, and his conclusions therefrom, without any argument upon the evidence introduced by the prosecution.

ID. — EVIDENCE — MEDICAL BOOKS. — Medical treatises are not admissible in evidence, whether proved to be standard works or not, except to discredit a witness who based his testimony upon them. They cannot be introduced in evidence, in effect, by asking a medical witness to name

the circumstances of cases he had read bearing on the subject of his testimony. If portions of medical books which are excluded have a tendency to discredit a medical witness, they must be incorporated in the bill of exceptions.

ID. — CROSS-EXAMINATION — CHARACTER. — Where the testimony of a witness for the prosecution on cross-examination discloses prejudice against the family of the defendant on account of what was heard about their character, the particular reason for the prejudice is immaterial, and a question as to what the character was which the witness speaks about may be ruled out without prejudicial error.

ID. — LEADING QUESTIONS — DISCRETION. — It is within the discretion of the court to permit the district attorney to put leading questions to his own witness.

ID. — CONFESSION OF DEFENDANT — EXAMINATION IN CHIEF — CONCLUSION OF LAW. — When the evidence shows that a confession of the defendant was freely and voluntarily given, without inducements or threats, it is admissible against him. When the witness to the confession testifies in chief that it was so given, and there is opportunity for cross-examination as to whether or not it was a free and voluntary statement, the testimony in chief of the witness cannot be stricken out before cross-examination, as being a conclusion of law.

ID. — EXPERT — HYPOTHETICAL QUESTION. — All the testimony given in the case cannot properly be read as part of a hypothetical question to a medical witness. Counsel should assume certain facts, and put the usual hypothetical question.

ID. — HOMICIDE — TRIAL. — The court may properly prevent counsel for a defendant who is on trial for homicide from commenting on the actions of the juries in other homicide cases which were tried in the same place.

ID. — BILL OF EXCEPTIONS — DISCRETION. — It is in the discretion of the court to refuse to settle bills of exceptions during the trial of a criminal case, and to delay the settlement beyond the statutory time, and it is its duty to see that the record is correct, whether any objections are made by the district attorney to the proposed bill of exceptions, or not. The bill of exceptions imports absolute verity, and no suggestion can be received as to the elimination of material matters therefrom.

ID. — NEW TRIAL — MISCONDUCT OF JURY. — Affidavits of the jurors are admissible to deny alleged misconduct on their part, when urged as a ground for a new trial, and are conclusive as to whether newspaper articles were read by them which influenced them in finding their verdict. The court should see to it, by proceedings in contempt if necessary, that no newspaper articles tending to prejudice the defendant's cause should reach the jury.

ID. — NEWLY DISCOVERED EVIDENCE. — Newly discovered evidence which is merely impeaching or cumulative in character is not ground for a new trial.

ID. — TRIAL — CONDUCT OF PRESIDING JUDGE. — Whether the conduct of the presiding judge shows hostility to the defendant so as to prejudice the minds of the jurors, and contribute to his conviction, cannot be considered any further than is disclosed by the record, in the language used

in his rulings, questions, and remarks. The trial judge holds a great trust and responsibility in this regard, which can be controlled only by his own conscience, and a desire for equal and exact justice, except in cases of palpable abuse of power. The court cannot be too careful in guarding both itself and the jury from all suspicions of prejudice.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Eugene N. Deuprey, William H. Jordan,* and *Carroll Cook,* for Appellant.

The application for change of venue made by the defendant on the 4th of December, 1886, should have been granted. The discretion invoked by the application is not a mere arbitrary discretion, but must be reasonable. The denial of the application was an abuse of discretion. (*Walker* v. *State,* 42 Tex. 360; *Kennon* v. *Gilman,* 5 Pac. Rep. 847; *People* v. *Baker,* 3 Abb. 54; *People* v. *Long Island R. R. Co.,* 16 How. 108; *Moulton* v. *Beecher,* 1 Abb. N. C. 193; *People* v. *Yoakum,* 53 Cal. 567.) The body of persons by which the so-called indictment was found, under which the defendant was tried, was not drawn as a grand jury according to law. The motion to strike the indictment from the files, and the motion to set it aside, should therefore have been granted. (Code Civ. Proc., secs. 192, 204–211, 241–243.) The defendant did not have an examination before any committing magistrate for any crime or offense, and, previous to the finding of the indictment herein, he was not allowed to send for, and the court did not send for, any counsel to represent him. This procedure was erroneous; for although the grand jury is not bound to hear evidence, still, a prisoner may not be called upon to waive the privilege given him by law to produce evidence before the grand jury. Whether the grand jury will hear evidence in behalf of the prisoner is a question which he has a right

to have them pass upon, and that upon his application to them for that purpose. (*Lung's Case,* 1 Conn. 428; *State* v. *Fassett,* 16 Conn. 458; *People* v. *King,* 28 Cal. 265.) The court erred in denying the motions made on the part of the defendant for a continuance. The action of the court in so ruling was arbitrary, unwarranted, and against law. (Pen. Code, secs. 1062, 1453; Code Civ. Proc., sec. 595.) The court exceeded its jurisdiction in making the order appointing counsel for defendant when he already had counsel, and in making such appointment contrary to the desire and against the protest of defendant, and where no substitution of attorney had been ordered, and where the counsel retained had not been by any order of court removed. The action of the court in requiring him to go to trial without the presence of his counsel, and of his own choice, deprived the accused of his constitutional right, and the order was arbitrary, unwarranted, and void. The defendant had the right to choose his counsel, and to be defended by them; otherwise the constitutional right of the prisoner to his counsel became subject to the caprice of the judge, who would be able to substitute counsel for the very purpose of preventing a vigorous or successful defense. (Pen. Code, sec. 987; Code Civ. Proc., sec. 284; *Regina* v. *Yscuado,* 6 Cox C. C. 386; *Queen* v. *Paige,* 2 Cox C. C. 221; Cooley's Constitutional Limitations, 334; Weeks on Attorneys at Law, sec. 184; *Wilson* v. *State,* 3 Heisk. 236; Const., art. 1, sec. 13; 1 Bishop on Criminal Proceedings, secs. 1008–1010; *Walker* v. *State,* 42 Tex. 360; *Conrad* v. *Knapp,* 9 Pick. 498; *State* v. *Collins,* 70 N. C. 241; *Valle* v. *State,* 9 Tex. App. 62–66.) The court erred in not allowing counsel to cross-examine such jurors as stated that they entertained conscientious scruples where the penalty was death; and also in not informing the defendant that if he intended to challenge an individual juror, he must do so when the juror appears, and before he is sworn. (Pen. Code, sec. 1066.) The defendant was not allowed

a full defense, even by the appointees of the court. (*Huub* v. *State*, 49 Ga. 255; *State* v. *Collins*, 70 N. C. 241; *Word's Case*, 3 Leigh, 806; *Commonwealth* v. *Garth*, 3 Leigh, 829; *State* v. *Ferris*, 16 La. Ann. 424; *People* v. *Kohler*, 5 Cal. 72; *People* v. *Keenan*, 16 Cal. 584.) The court erred in compelling the defendant to furnish evidence against himself by causing him to stand up for the purpose of being identified. (Const., art. 1, sec. 13; *Higdon* v. *Heard*, 14 Ga. 259; *Wilkins* v. *Malone*, 14 Ind. 156; Starkie on Evidence, 40; *State* v. *Quarles*, 13 Ark. 309; *People* v. *Hackley*, 24 N. Y. 75; Wharton on Evidence, secs. 536, 731; *Emery's Case*, 107 Mass. 181; *Mitchell's Case*, 12 Abb. Pr. 253; *Latimer* v. *Alexander*, 14 Ga. 259; *Wilkins* v. *Malone*, 14 Ind. 156; *State* v. *Jacobs*, 50 Jones, 259; *People* v. *Lee Sare Bo*, 14 Pac. Rep. 310; *State* v. *Clement*, 14 Pac. Rep. 413; *People* v. *Turner*, 39 Cal. 371.) The court erred in refusing to furnish the counsel appointed by it with a copy of the indictment, on their application, before proceeding with the trial, and also erred in not permitting two counsel to make opening statements. Section 1093 of the Penal Code provides that, after the jury has been impaneled and sworn, the trial must proceed in a certain order. It is provided therein that the defendant or his counsel may "open the defense." The record shows that the counsel who first opened the case for the defendant expected his associate to follow him, and left a portion of the case unrepresented in anticipation of his so doing. (*People* v. *Fair*, 43 Cal. 137.) The interruptions of counsel of the defendant by the court in the opening statement and in the argument were both uncalled for and prejudicial to the defendant, and the remarks made by the court on such interruptions tended to strongly prejudice the jury against him; further, counsel were not exceeding the bounds allowed, and especially in capital cases. (*People* v. *Lee Sare Bo*, 14 Pac. Rep. 310; *State* v. *Clements*, 14 Pac. Rep. 413.) The medical work having

been admitted in evidence for the purpose of impeaching a witness who had based his opinion upon it, the court should not have prevented counsel reading from it, as no objection was made; for such action on the part of the court conveyed to the jury an impression as to the opinion and feelings of the court in the case. One of the portions which the court would not allow read was an illustration. Certainly, opinions formed by professional men from text-books read by them are always based upon the illustrations and cases cited more than they are upon the text. Again, the book having been admitted in evidence, it was the province of the jury, not of the court, to determine whether the same tended to contradict or impeach the witness. (*Gallagher* v. *Market Street R'y Co.*, 67 Cal. 13; *City of Ripon* v. *Bittel*, 30 Wis. 614; Wharton on Criminal Evidence, secs. 537, 538.)

*Attorney-General Johnson, E. B. Stonehill,* and *Joseph Kirk,* for Respondent.

The application for a change of the place of trial was properly denied. The affidavits on which the application was based are mostly on information and belief, giving merely the opinions of the deponents, instead of the facts. Stating that the defendant cannot get a fair and impartial trial is not stating a fact. The counter-affidavits presented by the people show that at that time the excitement had almost subsided, that defendant needed no protection whatever, that a single officer accompanied him in going to and from the court, and without any molestation whatever. Under these circumstances, the refusal of the change was not an abuse of discretion. (*People* v. *Yoakum*, 53 Cal. 568; *People* v. *McCaulay*, 1 Cal. 380; *People* v. *Perdue*, 49 Cal. 425; *People* v. *Plummer*, 9 Cal. 298; *People* v. *Fisher*, 6 Cal. 155; *People* v. *Chambers*, 18 Cal. 383.) The motions for continuances were properly denied. (*People* v. *Quincy*, 8 Cal. 89; *People* v. *Ashnauer*, 47 Cal. 98; *People* v. *Mortimer*, 46 Cal. 114; *People*

v. *Thompson,* 4 Cal. 239; *People* v. *De Lacey,* 28 Cal. 589; *People* v. *Francis,* 38 Cal. 187; Pen. Code, secs. 1052, 1349, 1354.) No constitutional right of the defendant was impaired by ordering him to stand up for purposes of identification. (*State* v. *Ah Chung,* 14 Nev. 79; *Walker* v. *State,* 7 Tex. App. 246; *State* v. *Woodruff,* 67 N. C. 89; *State* v. *Garrett,* 71 N. C. 85; Burrill on Circumstantial Evidence, secs. 641, 644.) It was not error to refuse to allow the admission of medical works in evidence. (*People* v. *Wheeler,* 60 Cal. 581.) The counsel for the defendant, in his opening statement, was properly restricted to a statement of facts which he expected to prove without any argument thereon. (*People* v. *Bezy,* 67 Cal. 223; *People* v. *Williams,* 43 Cal. 349; *People* v. *Anderson,* 44 Cal. 65; Pen. Code, sec. 1093.) The motion to set aside the indictment is addressed to irregularities in the proceedings of a valid grand jury, and not to irregularities in its formation. (*People* v. *Southwell,* 46 Cal. 142; *People* v. *Colby,* 54 Cal. 37; *People* v. *Hunter,* 54 Cal. 65; *People* v. *Schmidt,* 64 Cal. 260; *People* v. *Butler,* 8 Cal. 435.) It was not error to permit the return of service of the jurors to be amended to conform to the facts. Clerical mistakes, unless prejudicial, are always correctible. (*Rousset* v. *Boyle,* 45 Cal. 64; *People* v. *Meerback,* 64 Cal. 370.) The defendant was not prejudiced by the refusal of the court to inform him of his right to peremptory challenges, as the record shows that he fully understood and exercised his right. (*People* v. *Mortier,* 58 Cal. 262.) Proceeding with the trial without furnishing the counsel appointed by the court with a copy of the indictment was not error. *People* v. *Lightner,* 49 Cal. 226; *People* v. *Sprague,* 53 Cal. 494.) It was not error to allow in evidence the written statement or confession of the defendant made in the office of the chief of police. (*People* v. *Rodundo,* 44 Cal. 538; 1 Bishop on Criminal Proceedings, sec. 1238; *People* v. *Long,* 43 Cal. 446.) The affidavits of the jurors show that there was no misconduct, and were admissible for

such purpose. (*People* v. *Hunt*, 59 Cal. 430; *People* v. *Lyle*, 4 West Coast Rep. 349; *People* v. *Hope*, 62 Cal. 241; *People* v. *Dye*, 62 Cal. 523.

PATERSON, J.—The defendant is under sentence of death for having willfully, unlawfully, and of his malice aforethought killed one Mary Elizabeth Kelly, in the city and county of San Francisco, on the tenth day of November, 1886. It appears that Goldenson and the deceased—who was only fourteen years of age—had been acquainted for two or three years, and during that time lived with their parents, in adjoining houses. The girl was returning home from school on the day of the homicide, when the defendant met her, and said, "Come here, Mamie, I want to see you." Leaving her school-mate,—with whom she was walking,—she joined the defendant, and had proceeded about half a block with him, when he suddenly turned towards her, and say , 'Take that and go," pointed a pistol at her, and shot her, killing her instantly. He then ran to the nearest police station, throwing his pistol away in his flight, and gave himself into the custody of the officers, saying, "I have shot my girl." On his way to the office of the chief of police, after he had delivered himself up to the officers, he that he had shot the deceased because she became annoyance to him; that they had been "keeping company" and had corresponded and dood since , that when he met her she had a letter in her hand which he had sent her that morning; and that she had called him "a damned Jew," whereupon he shot her. Upon his arrival at the office of the chief of police, at his own request he was permitted to make a written statement about the homicide. The substance of this statement is, that the deceased had been constantly annoying and following him; had been continually seeking his company against his wishes; and that just before he shot her she had called him "a damned Jew."

There seems to be very little controversy about the facts of the case; the defense relying, so far as the merits go, apparently upon the insanity of the defendant, under his plea of not guilty. In support of their contention that the judgment should be reversed, counsel for the defendant have filed elaborate briefs, in which more than a hundred points are made against the regularity of the proceedings in the court below.

The points which seem to be urged with the most zeal and confidence are, that the court erred in denying the motions for a change of venue and for a continuance. In support of their motion for a change of venue, counsel for defendant made what appears to be a very strong showing. It appears from the affidavits that "within a few days after the homicide, had occurred, a crowd of people assembled in front of the house of said defendant, and some of them cried out, 'Close him up!' 'Make the Jew close up!' 'Hang him!' 'Lynch him!' that a guard of police was necessary at that time to protect the property of defendant's family; that for several days defendant's relatives feared to leave their home; that the shutters and windows of affiant's store were broken by some of the excited people gathered there, and that on the occasion of the attempted removal of defendant's family, some of their property had been injured, and that for several days succeeding November 10, 1886, many people remained continuously in the vicinity of defendant's home, uttering threats of violence against defendant and his family; that the newspapers in said city and county were daily denouncing said defendant, and demanding his immediate execution; and that, for the reasons given, it was impossible for defendant to receive a fair and impartial trial in said city and county. Mrs. Goldenson, the mother of defendant, incorporated in her affidavit clippings from the newspapers describing a meeting which took place at Metropolitan Hall on November 12, 1886. It appears from said articles that

said meeting was held for the purpose of raising money for the mother and grandmother of the deceased, and to engage counsel to assist in the prosecution of the defendant, but that many turbulent acts and threats of mob violence were indulged in by members of said meeting; that on the night of said meeting, the sheriff and chief of police had the jail, where the defendant was confined, guarded by a large force of men, well armed, and precautions had been taken against any unlawful assault or attack; that about 8:30 o'clock of the night in question several thousand people assembled in front of said jail, and many appeals were made for immediate violence; and that finally the crowd was driven away and dispersed by a determined effort of a large force of police, but not until many blows had been given and interchanged." It further appears, from the affidavit first quoted, "that an attempt to remove their property on November 13th was frustrated by the offer of violence; that on November 16th, under the protection of the police, a removal was effected; that affiant had read highly inflammatory articles in the papers calling for the speedy trial and execution of defendant, and had heard many bitter and hostile expressions of opinion by citizens towards said defendant."

If this condition of affairs existed at the time of the trial, it must be admitted that the city of San Francisco was not a proper community from which to attempt to select a fair and impartial jury for the trial of the defendant. When the public mind is wrought into such frenzy, and the public press sustains enraged citizens, organized for avenging crime, in their unlawful attempts to overcome the duly constituted officers of the law, and only the superior force of the latter prevents mob execution, no man whose blood is thus demanded can hope to secure the rights guaranteed to him by the constitution. It is impossible, under such conditions, to secure an equal, exact, and impartial interpretation and

execution of the laws, which is not only the right of every person, but which is essential to the welfare of all and the conservation of good government. But while the facts stated in the affidavits on behalf of the defendant are admitted to be true substantially, there are two sufficient reasons why the order of the court below denying the motion for change of venue should not be disturbed: 1. Because the principal occurrences upon which affiants for defendant based their belief that a fair and impartial trial could not be had transpired within a few days after the homicide, and the counter-affidavits filed by the prosecution tended to show that the excitement which had been aroused by the homicide had entirely subsided, and had not prevailed for three weeks prior to the time of the application for a change of venue. We cannot say that, under the showings made by the respective parties, the court abused its discretion in denying the motion. Such applications are addressed to the sound discretion of the court, and where error is assigned, a clear case should be shown by the record, or this court will not interfere. The court below was then in a better position to weigh the statements of the parties and to determine the truth than this court is now. (*People* v. *Fisher*, 6 Cal. 155; *People* v. *Congleton*, 44 Cal. 92.) In *People* v. *Yoakum*, 53 Cal. 570, upon which appellant relies, there was no counter-showing made by the prosecution, and, as stated by Wallace, C. J., "so bitter, indeed, was the public feeling against the prisoner, that its manifestation could not be wholly repressed, even in the presence of the court, when the trial was about to commence." 2. The motion was denied temporarily only, and although permission was given to renew the application, no effort was afterwards made to procure a change of venue. The motion was denied conditionally on December 7, 1886. The impanelment of the jury did not commence until February 21, 1887. At several sessions of the court, including that held on the last-named date,

the defendant was represented by counsel of his own
selection, and by those appointed by the court, all of
whom made various motions, but none of whom renewed
the application for change of venue. The order of the
court was proper. Between the time of the application
for a change of venue and the date of trial when a jury
is to be selected, great changes may occur in the opinions
of the public touching the guilt of the defendant; and it
was the duty of the defense, if a change of venue was
desired, to renew the application at the time suggested
by the court. (*People* v. *Plummer*, 9 Cal. 309.)

The motions for a continuance were made on February 14, 16, and 21, and on March 7, 1887. The grounds
of the motions in each instance were: 1. That certain
commissions for the depositions of foreign witnesses
had not been returned; 2. That the senior counsel for
defendant was engaged in the trial of a civil case in
another department of the superior court; and 3. That
the junior counsel was a member of the state legislature,
then in session.

We are unable to see how the defendant could be
prejudiced by the absence of the depositions referred to,
conceding that the production of them was not waived
by the stipulation of defendant's counsel at the time the
commissions were issued, and conceding that the great
lapse of time between the issuance of the commissions
and the date of the trial did not operate as a legal
excuse for going on with the trial without them; for it
appears from the bill of exception that the interrogatories propounded to the witnesses named in the depositions related solely to the insanity of defendant's
grandfather, and the fact that the grandfather was insane was not denied or in any way controverted. Witnesses on behalf of the defendant gave evidence of the
fact; it was established by uncontroverted evidence; and
the court would have been bound, at the defendant's
request, to instruct the jury that the fact was so established, and must be taken as true.

The fact that one of defendant's counsel was engaged in a civil case in another department of the superior court was no ground for a continuance. The defendant's plea of not guilty was entered on November 23, 1886. The case was set for trial on December 6th, and by successive continuances it went over until February 21, 1887, when the trial commenced. The case was continued from December 7th to February 14th at the request of defendant's counsel, and to enable him to prepare for trial. On December 17, 1886, the professional services of the senior counsel were engaged for the Tiffany will contest, the trial of which was begun on January 18, 1887, and was in progress on February 14th, the day defendant's case was set for trial.

When the defendant's case was called for trial, his counsel were unable to say when the will contest would be concluded, but it was conceded that it would take several weeks. Was it error to refuse a postponement, under these circumstances, until counsel had concluded his other engagement? It seems to us that the facts stated are a sufficient answer to the proposition. There was no certainty that the will contest referred to would be concluded within months of time after the motion was made. To hold that a defendant charged with crime has an absolute right to counsel of his own selection, with unlimited right to insist upon continuances of his trial, and that the court, jury, and witnesses must await the convenience of his counsel in fulfilling other engagements, would be subversive of the prompt administration and execution of the laws,—upon which depends largely their effectiveness,—and subject the time and service of citizens serving the state gratuitously, as jurors and witnesses, to the wishes and interest of the attorney engaged in the defense. It is too apparent for argument that the court below must, in the nature of things, have some control over such matters; and if it has any discretion, it is equally apparent that it was not

abused in this particular instance. (Pen. Code, sec. 1052, Deering's notes.) The attorney for the defendant was bound to know whether the case, in which he became engaged after the defendant's case was set for trial, would be concluded in time to enable him to fill both engagements; and the responsibility for the loss or prejudice to defendant's cause, if any there was, by reason of the inability or refusal of his counsel to proceed with the defense of his client when his case was regularly called, was properly placed by the court below when he stated to the attorney, as he left the court-room, that it rested upon the latter alone.

The junior counsel was a member of the legislature and speaker of the assembly when the case was tried; but it does not appear that he was engaged in the defense herein when the session began, or before February 14, 1887. An inquiry was made by the court as to how long he had been engaged for the defense, but the senior counsel declined to inform the court further than by the affidavits, which did not show the time. The court was justified, therefore, in believing that the employment began not earlier than February 14th, when said counsel's name first appeared in the proceedings. Prior to that time he was not known in the case. Section 595 of the Code of Civil Procedure provides that "a trial shall be postponed when it appears to the court that the attorney of record, party, or principal witness is actually engaged in attendance upon a session of the legislature of this state as a member thereof." If this section of the Code of Civil Procedure applies to the Penal Code (which is doubtful, in view of section 1052 of the Penal Code), it refers, we think, only to those who become attorneys of record before the commencement of the session of the legislature. The object of the statute was to protect clients whose attorneys, after employment, had been called to their legislative duties, and to secure lawyers in the legislature from loss to their private business

which might be caused by attention to their public duties.

On February 16, 1887, when counsel for defendant withdrew, stating that he could not proceed with the trial, the court informed the defendant that he might name any attorney in the city to defend him, and he would be sent for and appointed, and that he would be given a reasonable time to prepare for trial. The offer was declined, whereupon the court appointed two members of the bar to defend him, and the cause was continued five days, to enable the defendant to prepare for trial. In his affidavit for continuance the senior counsel for defendant set forth "that affiant in particular has prepared the defense of defendant with sedulous care, and has made a very thorough examination of the law governing the facts of said defense, and is thoroughly acquainted with all the facts of the defense." We must assume that said counsel, notwithstanding the fact that the court ruled against him, and appointed other counsel to look after the interests of the defendant, gave to counsel actually engaged in the defense of the defendant all the information which he possessed, and which would in his opinion aid them in their unpaid effort to secure an acquittal of his client. No attorney, under the circumstances, would be likely to feel himself so fortified in his contention that the court had committed a fatal error as to risk a conviction upon his opinion rather than give those appointed by the court the information he possessed, when called upon by them to do so. That they made a vigilant, vigorous, and an able defense the record bears ample evidence, and there is nothing to show—except the presumption which may follow the fact of a longer employment—that the defense was less effective than it would have been if conducted by counsel of the defendant's own selection.

It is claimed by appellant that the court had no authority to appoint attorneys to defend the defendant,

because he had already employed, and had acting for him, an attorney of his own choice, and because he neither desired nor was he unable to employ another; that it is only when the prisoner desires counsel, and is unable to employ one, that the court is authorized to appoint, and it is error if it does appoint one. But it was not a question whether he desired an attorney, and had the means to employ one. The question was, Who should represent him? He insisted upon having the case continued to suit the convenience of the attorney he had employed. This could not be done,—at least, that was the ruling, and all were bound to respect it. It was then and still is claimed in his defense, by his relatives and his retained attorneys, that he was insane. Whatever may be the right of a defendant where there is no question of insanity, the court acted, we think, in accordance with every principle of law, justice, and humanity in this case in selecting attorneys to look after the interests of the prisoner, who at that time, by all the affidavits, was represented as demented and unable to know right from wrong. The spectacle of sending a prisoner charged with murder to trial without counsel, in a case where the defense is insanity,—and especially under our practice, allowing that issue to be tried under the plea of not guilty,—would be a singular one in the enlightened jurisprudence of this age, and in violation of the constitutional guaranty that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, . . . . and to have the assistance of counsel for his defense." (Const. U. S., Amend. 6; Const. Cal., art. 1, sec. 13.)

The defendant moved to set aside the indictment under subdivisions 1 and 2 of section 995, and subdivisions 2 and 6 of section 896, of the Penal Code. The defendant moved, also, to strike the said indictment from the files, upon the grounds that previous to its filing the defendant was not examined before any magis-

trate, and had no opportunity to send for any counsel; that he had no notice of the said investigation by the grand jury, and was not confronted by any witnesses; that the testimony of the witnesses examined against him was not reduced to writing, and he was not committed for trial by any magistrate; that the indictment was invalid and void, because found by a body of men calling themselves a "grand jury," who had not been selected according to the requirements of law; and for that reason the court had no jurisdiction of the alleged crime or of the defendant. We think that the proceedings had by the judges of the superior court for the selection of grand jurors, and the certificates thereof, were substantially in compliance with the provisions of the statute regulating the same; but whether this be so or not, irregularities in the formation of a grand jury cannot be considered on motion to set aside an indictment. Such motion can be addressed only to irregularities in the proceedings of a grand jury. (*People* v. *Southwell*, 46 Cal. 142.)

The defendant was not entitled to notice that the grand jury was investigating a charge against him, nor was he entitled to be heard or have witnesses sworn and examined by that body, unless it called for the same. (*State* v. *Wolcott*, 21 Conn. 272; Pen. Code, sec. 920.) The objection that no examination was held before a committing magistrate does not apply in cases of indictment, although good in case of an information. (Pen. Code, sec. 995.) As to the other grounds of the motion to set aside and strike out, it is sufficient to say that the evidence introduced at the hearing of the motions was adverse to the defendant.

It was not error to direct the officers of the court to amend the return of service so as to conform to the facts. (*Gavitt* v. *Doub*, 23 Cal. 81; *Hewell* v. *Lane*, 53 Cal. 217; *Rousset* v. *Boyle*, 45 Cal. 64; *People* v. *Murback*, 64 Cal. 370; 1 Bishop's Criminal Procedure, secs. 1298, 1341-1345.)

The court disallowed a challenge to the first, second, and third panels of jurors specially summoned by the sheriff, under section 1064 of the Penal Code, on the ground of bias against the defendant by the sheriff and his deputies. The examinations of the officers showed that there was no foundation in fact for the charge.

There was no error in the refusal of the court to allow further examination of the jurors who stated that they entertained conscientious scruples against conviction where the penalty is death. When the court became satisfied that such opinions existed, it was its duty to excuse the jurors. (Pen. Code, sec. 1074.) We cannot say that discretion was abused in refusing further examination.

A challenge to the entire panel of trial jurors was made by the attorneys for defendant, but we are unable to find in the transcript any evidence offered in support thereof. If the denial was error, it should be affirmatively shown in the record. (*People* v. *Sing Lum*, 61 Cal. 539.) Unless there were exceptions reserved to the rulings of the court, the judge properly refused to incorporate in the bill of exceptions the evidence given by the jurors when examined upon their *voire dire*. The decision of the court upon a challenge to a juror for actual bias is final. The bill of exceptions does not contain the rulings of the court on the challenges to the jurors for actual bias. (*People* v. *Vasquez*, 49 Cal. 560; *People* v. *Cotta*, 49 Cal. 166.)

The court refused to allow the defendant to exercise peremptory challenges after he had exhausted the twenty challenges allowed by statute. It is claimed that this was error, because of the failure of the court to comply with section 1066 of the Penal Code, which provides that "before a juror is called the defendant must be informed by the court or under its direction that, if he intends to challenge an individual juror, he must do so when the juror appears, and before he is sworn." It does not ap-

pear affirmatively whether the defendant was informed of his rights in this regard, or not; but the defendant certainly had the full benefit of all the peremptory challenges to which he was entitled, and was not in any manner prejudiced by the error complained of. (*People* v. *Mortier*, 58 Cal. 262.)

It was not error for the court to deny defendant's motion for a retrial of certain challenges after the jury had been completed and sworn to try the case. (Pen. Code, sec. 1068.)

The defendant on the arraignment was given a copy of the indictment. When the court appointed counsel to defend him, said counsel requested a copy of the indictment, which request was refused. The court was not bound to supply the defendant with a second copy of the indictment. It is the defendant who is entitled to a copy, and not all who are his counsel. (Pen. Code, sec. 988.)

The contention is urged with much force that the court erred in ordering the defendant to stand up during the trial for identification by one of the witnesses. The witness had stated that he went into the station-house, and there found this young man (meaning the defendant). It is claimed that this act was violative of the constitutional provision that "no person shall be compelled in any criminal case to be a witness against himself." The defendant was in court, and it was proper for the jury, in identifying the person whom the witness had seen, to know whom the witness meant by the expression "this young man." He was not compelled to exhibit any part of his person which the jurors could not see as he walked in and out every day. It was not compelling the defendant to become a witness against himself in any respect, within the meaning of the constitutional provision above quoted. (*State* v. *Ah Chuey*, 14 Nev. 79.)

In his opening statement to the jury, one of the counsel in effect accused the presiding judge of having crowded the case on to trial when the defendant

was not ready. The court promptly and properly directed him to cease commenting or reflecting on the action of the court in that regard; saying that, if any error had been committed, the prisoner had the benefit of an exception. The court, furthermore, did not err. in refusing to allow counsel in his opening statement to refer to other cases, or read law in illustration of his argument. (*People* v. *Williams,* 43 Cal. 344.)

It was insisted at the trial that both of the attorneys for the defendant were entitled to make opening statements to the jury. The court refused to allow more than one statement. In this there was no error. "Where the offense charged is punishable with death, two counsel on each side may argue the case to the jury (Pen. Code, sec. 1095); but section 1093 of the Penal Code provides simply "that counsel may open the defense." It was within the discretion of the court to limit the statement to one counsel.

Several assignments of error are made respecting the rulings of the court upon expert testimony offered, and the right to introduce medical works in rebuttal of the testimony of witnesses called on behalf of the people. It has been held here that medical treatises are not admissible in evidence, whether proved to be standard works or not, except to discredit a witness who based his testimony upon them. (*Gallagher* v. *Railway Co.,* 67 Cal. 13.) Dr. Woolsey, one of the experts called by the defense, was asked to name the circumstances of the cases he had read where violence accompanied hysterical mania, and the court sustained an objection to the question. If allowed, the examination would have been in effect the introduction of medical works in evidence, and therefore it was properly rejected. (*People* v. *Wheeler,* 60 Cal. 581.)

The court refused to allow counsel for defense to read in surrebuttal certain portions of a medical treatise by Dr. Maudsley, which were offered to discredit and con-

tradit Dr. Clark, a witness for the people; but offered to allow any portion relevant to the testimony given by Dr. Clark, and which tended to contradict him, to be read in evidence. If the portions which were excluded had any tendency to discredit or contradict the witness upon any matter about which he had testified, they ought to have been incorporated into the bill of exceptions, so that we might determine whether they were pertinent. They are not in the bill. Furthermore, it does not appear that the witness predicated his opinion upon the authority of Dr. Maudsley's works. There was, therefore, no error in the ruling of the court in that matter.

The court did not err in requiring the counsel for the defendant in his opening statement to confine himself to a statement of the facts, the effect thereof, and his conclusions therefrom, without any argument upon the evidence introduced by the prosecution. (*People* v. *Bezy*, 67 Cal. 223; *People* v. *Williams*, 43 Cal. 349; Pen. Code, sec. 1093, subds. 3, 5.)

Mrs. Kelly, mother of the deceased, testified in her cross-examination: "I heard the Goldensons were of such a character that I did not wish my daughter to go to their house." Defendant's counsel then inquired: "What was the character that you speak about?" An objection thereto was sustained, on the ground that it was immaterial and irrelevant. We see no prejudicial error in this ruling. The testimony of the witness showed that she was prejudiced against the Goldensons: the particular reason therefor is immaterial.

Several errors are assigned, based upon the rulings of the court in permitting the district attorney to put leading questions to his own witness. This is a matter within the discretion of the court. (Code Civ. Proc., sec. 2046; *People* v. *Ah Fook*, 64 Cal. 381.)

There was no error in the admission of the declaration or confession of the defendant. The evidence in the transcript shows clearly that the statement was

freely and voluntarily given, no inducements having been offered him or threats made. (*People* v. *Rodundo*, 44 Cal. 538.)

One of the detectives examined as a witness, referring to the statement made by the defendant, said: "He made it freely; no inducements held out to him, or promise, or expectation; no threats made." Counsel for defendant moved to strike out this testimony on the ground that it was a conclusion of law. The motion was denied, the court saying: "You have the privilege now of examining the witness upon the question whether or not it was a free and voluntary statement." There was no error here. (*People* v. *Rodundo*, 44 Cal. 538.)

Portions of the deposition of one Louis Rosenthal, on behalf of the defendant, were excluded by the court of its own motion. The portions thus excluded appear to be clearly hearsay,—the relation of matters which occurred between third persons,—and it was not error, with or without an objection from the prosecution, to exclude the same.

The court did not err in refusing to permit all the testimony given in the case to be read as a hypothetical question to Dr. Simon. (*Regina* v. *Frances*, 4 Cox C. C. 57.) Counsel were told that they might assume certain facts, and put the usual hypothetical question, and this was finally done, and was proper. (2 Bishop's Criminal Procedure, sec. 685.)

It was not error for the court to prevent counsel for the defendant from commenting upon the actions of the juries in the Gunn, Gardiner, and other homicide cases which had been tried in San Francisco, and in stating that the case before the court should be tried upon the evidence given in the court, and the law applicable thereto. (*People* v. *Anderson*, 44 Cal. 70.)

Many other errors are assigned which we do not deem it necessary to consider. Some of them are already covered by the propositions which we have discussed herein;

others are too frivolous to be worthy of consideration, such as the following: That it was error to permit counsel for the defense to ask Dr. Hayne, "What is the first question that a doctor puts to his patient?" and that the court erred in refusing to hear one of the counsel for the defendant, immediately upon the conclusion of the statement to the jury, discuss before the court and the jury certain questions of law which he anticipated would arise during the trial.

No attempt has been made to point out any errors in the instructions. They seem to be fair and correct.

It was not error in the court to refuse to settle bills of exceptions during the trial. They are all included in the bill of exceptions before us, and the errors claimed have been reviewed. It was within the discretion of the court to delay the settlement of the bill of exceptions beyond the statutory time, and it was its duty to see that the record was correct, whether any objections were made by the district attorney to the proposed bill of exceptions, or not. (*People* v. *Sprague*, 53 Cal. 424; *People* v. *Lee*, 14 Cal. 510; Pen. Code, sec. 1175.)

An intimation is made that the court, in settling the bill, eliminated certain material matters, to prevent the defendant from having the benefit of a full defense herein. But we must take the statement in the bill as one of absolute verity. The judge certifies that "in the examination of proposed jurors, no question as to their competency was disallowed, no evidence was rejected, no objection to the admission or rejection of any testimony sustained, and no objection or exception to the allowing or disallowing of any question, evidence, or testimony on said examination was made or saved, except as herein and now particularly set forth." Then follow three exceptions: Counsel for the people were permitted to put this question to a proposed juror: "I suppose what you mean to say is this, that you object to the abuse of the plea of insanity, and not to the plea of in-

sanity itself." No objection was made to this question, except as to the form thereof. The second exception was taken to the refusal of the court to hear an argument from one of the counsel for the defense upon a challenge for actual bias after the trial thereof had been concluded. The third objection is, that the court erred in allowing the district attorney to propound a certain question to a juror after he had been examined and passed by counsel for the defendant and for the people. It is clear that there was no error in any of these three rulings, and we think that the court properly declined to incorporate into the bill of exceptions the testimony of the jurors given in their examination on their *voire dire.*

One of the grounds upon which defendant asked for a new trial was, that the jury had been guilty of misconduct, by which a fair consideration of the case had been prevented. The substance of the misconduct charged consisted in the jurors having disobeyed the admonition of the court about reading newspaper articles during the trial which reflected on the defendant. All of the jurors filed affidavits denying fully the charges of misconduct preferred, and insisting that no admonition of the court had been disobeyed, and that no newspaper articles or anything else, save the evidence and the charge, influenced them in finding their verdict. These affidavits were allowable, and are conclusive upon the point made. (*People* v. *Hunt,* 59 Cal. 430; *People* v. *Dye,* 62 Cal. 523.) Another ground of the motion for a new trial was, that new evidence had been discovered material to the defendant; but it appears from the affidavits filed in respect thereto that the newly discovered evidence was simply impeaching or cumulative in character. It was therefore insufficient to support the ground for a new trial. (*Stoakes* v. *Monroe,* 36 Cal. 585; *People* v. *Anthony,* 56 Cal. 397.)

Counsel for defendant in their briefs complain bitterly of the manner and conduct of the presiding judge

during the trial, claiming that they were clearly indicative of a strong feeling of hostility against the defendant and prejudice against his defense; that this feeling was repeatedly manifested in the many severe interruptions of counsel's arguments, and the interjection of questions and objections without any motion or desire therefor on the part of the prosecuting officers; and that such conduct of the judge must necessarily have prejudiced the minds of the jurors against the defendant and his cause, and contributed to his conviction. But, as we have intimated in other cases, these are matters which cannot be shown by the record, unless there is in the language used by the judge in his rulings and questions and remarks something from which this court can say the jurors were prejudiced. The trial judge holds a great trust and responsibility in this regard, which can be controlled only, except in cases of palpable abuse of the power, by his own conscience, and a desire to see equal and exact justice done between the people and the defendant. (*People* v. *Lee Sare Bo,* 72 Cal. 623.)

During the trial it appears that several inflammatory articles were published in some of the newspapers tending to prejudice the defendant's cause, and which may have been read by the jurors. While the affidavits of the jurors are, of course, taken as true, and it appears therefrom that no prejudice was created in any way in this case, yet the court below cannot be too careful in guarding itself and the jury from all suspicion of prejudice, by refraining from making remarks which may appear adverse to either party; and should see to it, by proceedings in contempt, if necessary, that no such ____per articles reach the jury. Judgment and or____ed.

____. J., SHARPSTEIN, J., McFARLAND, J., Mc____ and THORNTON, J., concurred.