ANNAWAN MILLS, Incorporated, *vs.* JOHN MANGENE.

Bristol.    January 4, 1921. — February 28, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Practice, Civil,* Use of exhibits.    *Evidence,* Competency.    *Contract,* Implied.

At the trial of an action of contract brought by a mill corporation against an overseer to recover money which, the plaintiff contended, the defendant wrongfully had appropriated to his own use, it appeared that pay was distributed to the plaintiff's employees under the supervision of the defendant from pay-rolls made up by him and by the use of a checking system; and the plaintiff introduced evidence tending to show that, in an interview of one of its officers with the defendant with the pay-roll before them, the defendant had admitted the use by him of fictitious names on the pay-roll and the appropriation by him of the pay set down opposite those names.    The officer also testified that all the pay claimed by the plaintiff to have been taken by the defendant was listed from the defendant's time-book as made up by him.    There also was testimony tending to show that, under the direction of the officer, red check marks were placed on the pay-roll against names which the defendant had admitted were not names of actual employees and against the amounts, accredited to their names, which, the jury could find, the defendant had admitted that he had converted to his own use.    The pay-rolls and the defendant's time-books were admitted in evidence.    The judge in substance charged the jury that, if they found that the defendant took the money, they must find how much was taken, and that the items named in the pay-rolls and time-books had not been proved, and for that reason he ordered that the pay-rolls and time-books should not be taken to the jury room as exhibits.    The jury found for the defendant and the plaintiff alleged exceptions.    *Held,* that

(1) The record showed that the pay-rolls and time-books were not excluded from the jury room as a matter of discretion;

(2) The evidence warranted findings that the defendant had admitted defalcations according to the items marked in red on the pay-rolls;

(3) The judge's ruling as a matter of law that the pay-rolls and the time-books had not been proved was erroneous;

(4) The plaintiff's exceptions must be sustained.

CONTRACT for money had and received by the defendant to the plaintiff's use.    Writ dated March 11, 1919.

In the Superior Court the action was tried before *Raymond,* J. Material evidence and exceptions saved by the plaintiff are described in the opinion.    The jury found for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*A. S. Phillips,* for the plaintiff.

*F. M. Silvia & E. T. Murphy,* for the defendant.

PIERCE, J. This is an action of contract for money had and received. The answer is a general denial. In substance the material facts are as follows: The defendant was an overseer in charge of the sorting room of a waste mill, which was operated by the plaintiff. As such overseer, it was his duty to keep in his own handwriting a time-book, wherein he should record a weekly statement of the hours worked by and the name of each employee under his charge. It was his further duty to see that the name of each of such employees got in the pay-roll which was made up in the office from his time-book. On the pay-roll, opposite the name of each employee, was a number which corresponded to a like number on a check which was allotted and delivered by the overseer each week to such employee. Each individual employee received his pay from the paymaster by surrendering to him in the overseer's presence the check given him. If any pay was unclaimed, it was taken back to the office until claimed, the check being kept by the overseer. When an absent employee would come back for his pay the overseer would give that employee the check corresponding to his number and then the employee would go to the office and get his pay. Sometimes one employee was allowed to draw another employee's pay upon presenting the check of that employee. This action is based upon the contention that the defendant caused fictitious names to be added to the time-book and to the pay-roll, and thereon collected to his own use pay for unperformed labor.

At the trial the plaintiff relied entirely and exclusively upon alleged admission of the defendant of false entries of names in the time-book and upon the pay-rolls to prove misappropriations of money by the defendant, and the amount thereof. The defendant admitted that one of the alleged fictitiously used names on the time-book and the pay-roll was not the name of an actual employee, and claimed that he used the name to represent an employee whose name he did not know. He further testified that he did not take any money wrongfully of the plaintiff, and that he did not make the admission testified to by the plaintiff's witness, hereinafter stated.

For the plaintiff, the assistant treasurer in charge of the pay-rolls testified: "that on March 10, 1919, he had an interview with the defendant; that he told him discrepancies had been found in the pay-roll and asked him if he had not been taking several pays in different weeks during the past year or so, citing exact cases;" that he "told him that Mary Rosica had not been in the mill for a year or two and asked him whether he had not been drawing her pay; that defendant said he had taken that pay since June 2, 1917; also that he had taken another pay in the name of Mary De Gloria, but that he did not know for how long; that he had taken the money week by week; that the defendant said he had taken in all probably about $1,500." The witness further testified "that at that time the pay-roll was before them both and that witness looked over the names of the different employees with defendant for the different weeks and figured them up; that all the pay claimed to have been taken was listed from the defendant's time-book as made up by him; that all these sums were paid out by the corporation. . . ." There was testimony by an inspector of the police that the defendant told him that he did not remember how much money he had taken belonging to the plaintiff corporation, "but that he had started to take it on June 2, 1917, in the name of Mary Rosica."

The jury could have found on the testimony of the assistant treasurer and bookkeeper of the plaintiff, that the bookkeeper, under the direction of the assistant treasurer, had accurately placed a red check mark on the pay-roll against names which the defendant had admitted were not names of actual employees; as also against the amounts accredited to such names, which the jury could find the defendant admitted he had converted to his own use.

To aid the jury in arriving at or checking up the total of the several sums claimed to have been embezzled at times over a series of years by the defendant, the plaintiff submitted a summary statement made by the bookkeeper of the names and amounts accredited thereto which were identified on the pay-rolls by red check marks. This abridgment or compendium was excluded by the trial judge on the ground that the plaintiff had "not proved any figures as yet." The pay-rolls and time-books were received in evidence. The judge charged the jury as to the

legal effect of an admission and left it for them to say whether the defendant had admitted the defalcations, stating: "If you find that he did take the money, how much has the plaintiff shown that he took? That is the basis of your verdict. How much has the plaintiff shown by the testimony that he took? If you find a certain specific amount, either by admission or otherwise — on his part, an admission that you can rely upon — you have a right to make that the basis of your verdict" — that unless they so found they should return a verdict for the defendant, but he ruled and instructed the jury with reference to the time-books and pay-rolls that the items named in them had not been proved, and ordered that the pay-rolls and time-books should not be taken to the jury room as exhibits, at which time the following colloquy took place: The plaintiff's counsel: "May the pay-rolls go out, your Honor?" The judge: "The items have not been proved, and the pay-roll books will not go out." The plaintiff's counsel: "Your Honor will save me an exception." The judge: "Yes, I instruct that the items have not been proved, and the books will not go out." To this ruling and order the plaintiff duly saved its exception.

The charge and colloquy make it plain that the books were not excluded from the consideration of the jury at their deliberations in the jury room as a matter of discretion, which was not subject to exception, *Krauss* v. *Cope,* 180 Mass. 22, but were withheld from the use of the jury solely on the ground that as a matter of law "the items named in them had not been proved." *Farnum* v. *Pitcher,* 152 Mass. 470. *Boston Dairy Co.* v. *Mulliken,* 175 Mass. 447. *Sibley* v. *Nason,* 196 Mass. 125. It is the general rule that all papers which are duly admitted in evidence should go to the jury unless they are withheld by the judge as a matter of discretion. *Whithead* v. *Keyes,* 3 Allen, 495. *Krauss* v. *Cope, supra.* In the case at bar the discretion of the judge was not exercised to exclude them, and the customary rules as to proof of books of account were not applicable should the jury find, as the evidence clearly warranted, that the defendant had admitted defalcations and had also admitted that the books introduced in evidence showed facts from which the jury by examination and computation could determine with accuracy "how much," what "specific amount" the defendant had taken, as they were re-

quired to do under the instructions if a verdict was to be found for the plaintiff. Upon all the evidence we think the judge could not rightly rule that the items in the books had not been proved.

*Exceptions sustained.*