84 P.2d 80

**STATE v. LORD et al.**

No. 4350.

Supreme Court of New Mexico.

Oct. 8, 1938.

Rehearing Denied Nov. 25, 1938.

R. C. Garland, of Las Cruces, for appellant Lord.

J. B. Newell, of Las Cruces, for appellant Smith.

Frank H. Patton, Atty. Gen., and A. M. Fernandez, Asst. Atty. Gen., for the State.

BRICE, Justice.

The appellants, with George Alfred Lord and Emmett Powell, were jointly indicted and tried for the murder of Robert

Aubuchon. A verdict of murder in the first degree was returned against Delbert. Lord, second degree against George Alfred Lord and Walter Smith, and acquittal in favor of Emmett Powell.

■ It was within the sound discretion of the trial court to grant or refuse a severance; and unless it is shown that this discretion was abused his action in overruling appellant Smith's motion for a severance will not be disturbed. State v. McDaniels, 27 N.M. 59, 196 P. 177; Ballard v. Commonwealth, 156 Va.. 980, 159 S.E. 222.

■ All of the defendants, excepting Powell, signed written confessions, or admissions from which guilt could be inferred. Appellant Smith claims that because the confession of George Alfred Lord contained highly prejudicial, and damaging statements relative to Smith's participation in the crime charged, which would be introduced in evidence, that it was an abuse of discretion to deny him a severance. But in view of the court's instruction not to consider as against Smith anything contained in Lord's statement, it was not an abuse of discretion to deny a severance.

The district court, in the absence of the jury, heard the testimony of both appellants and the state regarding the making of the confessions and came to the conclusion that they were voluntarily made, and thereafter admitted such confessions in evidence; but instructed the jury with reference to the statement made by each of the three defendants; that if such statement, by reason of threats, duress, coercion, fear, hope or promise of reward or immunity, was not voluntarily made, that it should not be considered as evidence by the jury in arriving at a verdict.

The evidence submitted to the district court in the absence of the jury on the question of whether the confession of Lord was voluntary, discloses that after the appellants were arrested, district attorney Threet, who represented the State in their prosecution, together with six peace officers, went to the jail to interrogate them for the purpose of securing confessions. After three hours of questioning a written confession was obtained from Lord and signed by him.

At this preliminary hearing to determine whether the confessions were voluntary several peace officers were presented as state witnesses, and each was asked:

Q. "Now, before the defendant, Delbert Lord, made any statement in connection with the case, did you or anyone in your presence offer him any acts of violence, threats or coercion of any kind or character whatsoever to induce him to make any statement in connection with the case?"

Q. "And before any statement was made by the defendant, Delbert Lord, did you or anyone in your presence, hold out to the defendant, Delbert Lord, any hope or promise of immunity or reward to induce him to make any statement?"

Each witness answered both questions in the negative.

The proof elicited by these questions was in the nature of the conclusions at which the court must have arrived before he was warranted in admitting the confession in evidence. These negative facts could not be satisfactorily proved in this way if coercive methods' were used to cause the defendants to confess the commission of the crime; though in the absence of any attempt at coercion, whether by punishment, threats, promises, or other means, no other questions could elicit the proof of the negative fact. The State therefore made a prima facie case for the admission of the confession in evidence. State v. Holden, 42 Minn. 350, 44 N.W. 123; People v. Goldenson, 76 Cal. 328, 19 P. 161; Crain v. State, 166 Ala. 1, 52 So. 31; People v. Leavitt et al., 127 Cal.App. 394, 15 P.2d 894. Though there are authorities which hold that such conclusions are not admissible to prove that a confession is voluntary; that the proper method is for the State's witnesses to testify regarding the circumstances and means by which the confession was secured; that it is the court, and not the witness, who determines if a confession is voluntary. Bates v. State, 78 Fla. 672, 84 So. 373.

After the examination of the State's witnesses at the hearing on this preliminary matter, the appellant Lord testified in his own behalf, in substance, that district attorney Threet stated to him that "the other boys" had made a confession and left Lord as the "trigger-man;" that if he did not "come clean everything would be laid on you" and "if you come clean you will get off easier in court. They said if I would come through they would let me off easy, * * * that meant I would miss the chair."

"Q. Who told you that? (Dist. Atty. Threet to appellant Lord) A. You did.

"Q. Why did I say I would let you off easy? A. You said the other boys made a statement and laid everything on to me as the trigger-man. If I come through I would get off easy in court.

"Q. And knowing at the time you signed you were going to the electric chair? A₁ *You said I would get off easier in court, that meant I missed the chair.*

\* \* \* \* \* \*

"A. Jack Robinson said 'Are you afraid of the electric chair, are you yellow? I did not think boys where you came from were yellow.'

"Q. What effect did this statement have upon you with reference to making the statement you have signed? A. Well, it made me afraid when they fetched up the electric chair.

"Q. Did that induce you to make this statement? A. Yes.

"Q. Was this statement voluntary on your part? A. No."

He testified that he was seventeen years old when he made this statement and could not read or write and had never been to school.

The State's witnesses were not cross-examined regarding the means or

method of persuasion (if any) that was used by district attorney Threet and the six officers present at Lord's examination to elicit his confession. When the matter was presented to the jury on substantially the same testimony, one of the officers (Sheriff Viramontes of Dona Ana County) on cross examination, in some respects corroborated Lord's testimony, though probably not on vital points. State v. Wickman, 39 N.M. 198, 43 P.2d 933. The officer's memory failed him; and he took refuge in "I don't remember;" "I didn't hear that," or "I would rather not say." But at that time the question had become one for the jury to decide, though it was not too late to withdraw it from the consideration of the jury in the exercise of the court's discretion. State v. Jordan, 146 Or. 504, 26 P.2d 558, 30 P.2d 751.

 A confession made by a person accused of crime, induced by the promise held out to him by a person in authority, that if he would confess, his punishment would not be so severe as it otherwise would be, is not admissible in evidence because not voluntary. District attorneys are "persons in authority" within the meaning of the rule. State v. Foster, 25 N.M. 361, 183 P. 397, 7 A.L.R. 417; and annotation in 7 A.L.R. beginning at page 419. We stated in the Foster Case, 183 P. 398: "There is no more convincing evidence to the ordinary man than a confession of guilt, and where a confession is admitted, under an instruction to the jury to determine whether it is voluntary, or involuntary, and to consider it in the former case,

or in the latter case to reject it, the probabilities are, unless the confession was extorted under circumstances calculated to arouse sympathy for the defendant, that the average jury will consume but little time in determining the question of whether the confession was voluntary or involuntary, but will in the great majority of cases say the prisoner has confessed, and therefore is guilty beyond a reasonable doubt."

 The rules upon which involuntary confessions are excluded from testimony, as held by this court, are stated as follows:

"* * * The two leading principles of exclusion applicable to confessions were fully and thoroughly discussed in Territory v. Emilio, 14 N.M. 147, 89 P. 239, wherein Justice Parker announced the first to be that, when such confessions are induced by promises or threats, hope or fear, the temptation to speak falsely is so great as to render the statements so made entirely untrustworthy, and the second being that that portion of the Fifth Amendment to the Constitution of the United States [U.S.C.A.Const. amend. 5] which provides that 'no person shall be compelled in any criminal case to be a witness against himself' excluded involuntary confession, but when they are freely and voluntarily made, without being induced by promises or threats, hope or fear, duress or coercion, both doctrines of exclusion are met and overcome, and they are then admissible. Section 15 of article 2 of our Constitution being substantially the same, with

regard to the question now under consideration, as the Fifth Amendment to the Constitution of the United States, this court is led to the same conclusion concerning the admissibility of confessions as was the territorial court." State v. Dena, 28 N.M. 479, 214 P. 583, 584.

"It is to be remembered that the principle upon which confessions are held, under certain circumstances, to be inadmissible, is that they are deemed to be testimonially untrustworthy. * * *

"We understand these authorities to mean that promises of collateral benefit or boon not relating to immunity from the consequences of the crime are not, ex proprio vigore, sufficient to render the confession inadmissible as involuntary, and where they are not, under all the circumstances, sufficiently strong to overcome the will of the declarant so as to cause an innocent man to confess falsely, the confession is admissible." State v. Woo Dak San, 35 N.M. 105, 290 P. 322, 325.

"The question for the judge to determine is whether, under all the circumstances, the influence was strong enough to cause an innocent man to confess falsely. This puts heavy responsibility on the trial judge, since this court will not overturn his judgment merely because we might have decided differently. * * *

"In Woo Dak San's Case, supra, where all of our earlier decisions were weighed in conference, we intimated that when the occasion should require, it might be wise to consider some relaxation of the strict rule of exclusion. The occasion has arisen. For if mere adjurations to tell the truth—mere advice to tell the truth, or that it will be better to tell the truth—compel exclusion of the confession, this confession was erroneously admitted. * * *

"Where the suggestion is that 'it will be better,' or that 'it will be to your best interests' to tell the truth, it is possible to argue that the accused may have inferred some promise going to the punishment for the crime, and to bring the case within the principle stated in Dena's Case, supra. It is apparent however, that such a rule will render obtaining a confession a matter of the greatest delicacy, a matter too delicate to be intrusted to most peace officers. * * * It may be well enough to say that the law will not undertake to measure the influence of any real promise going to the punishment. We consider it too much to say that the judge must imply a promise where none was probably intended, perceived, or relied upon. Conditions in this jurisdiction, so far as our knowledge goes, do not call for so drastic a rule of exclusion. * * *

"We shall make no attempt to formulate now, nor to say the last word. But we hold that adjurations such as these may be considered by the judge, in the light of the circumstances, to determine whether the accused could reasonably have inferred a promise going to the punishment for the crime to be confessed." State v. Wickman, supra, 43 P.2d 936.

The responsibility on the trial court in admitting confessions in evidence is heavy;

as we stated in State v. Wickman, supra, for when it is before the jury, ordinarily it will be considered as evidence against the defendant, notwithstanding the court's instructions to first determine whether it was voluntarily made.

If the testimony of Lord was true, a real promise going to his punishment was made him by a person in authority, which influenced and caused him to make the confession. Confessions so obtained are held to be involuntary and are not admissible in evidence for the reasons stated in State v. Dena, supra.

After appellant Lord had testified to such promises and their effect upon him, it would have been the better practice had the court required the State to meet the charge of coercion with the testimony of the district attorney (notwithstanding he was an attorney in the case) and the six officers who knew the facts and who could have contradicted Lord's testimony if it was false. People v. Sweeney, 304 Ill. 502, 136 N.E. 687. If in truth coercive or persuasive means were used to extort the confession, then the answers of the state witnesses to the two stock questions upon which the State relied as proof that the confession was voluntary, became little more than opinions as to the legal effect of such means. Very naturally the defendants' counsel were reluctant to endanger their case in the preliminary hearing by cross-examining the State's witnesses; but they did not object to the mode of proof or request the court to make further inquiry.

If it is entirely proper for a district attorney who intends to use a confession for the purpose of convicting a defendant in a capital case, to take any part in persuading him to confess, it is utterly inexcusable for such attorney to secure a confession by improper promises; and when so charged by defendant, he should be prepared to testify, and thereby advise the court at the preliminary hearing on the question of the admissibility of such confession in evidence, with all the circumstances that brought it about. The State had seven witnesses to the means by which the confession of Lord was obtained, and none were used to contradict his specific charge, which in effect was that the confession was involuntary.

The responsibility was that of the district judge, and we are reluctant to hold that the failure of the State to produce these witnesses is a failure to meet the burden of proving that the confession was voluntary, in view of the fact that there was some evidence to support the court's conclusion, and of the failure of the appellants' counsel to cross examine these witnesses at the preliminary hearing, or to object to the mode of proof, but we suggest that it would have been better practice if the trial court had required the State to meet the issue made by appellant Lord's testimony (if possible) by evidence of the facts and circumstances that brought about his confession; though the conclusions of the State's witnesses had made a prima facie case for the admission of Lord's confession. There were seven

witnesses present who knew whether his testimony was true or false and none were called to rebut it.

Appellants excepted to the failure of the court to give to the jury their requested instructions numbers 1 to 16 inclusive, and assigned such failure as error.

Such assignment based upon the court's failure to give requested instructions Nos. 1, 3 to 9 inclusive, 11 and 16 are not presented for our consideration in defendants' brief and are abandoned.

 The District Court did not err in refusing to give to the jury appellants' requested instruction No. 2, for the reason that a person may be an aider and abetter to murder without having entered into a common design with others to take the life of a person.

 The court did not err in refusing requested instruction No. 10, defining "aid" and "abet". The court correctly defined these terms in his general instructions to the jury, and we see no material difference between the requested instruction and that given by the court, which was as follows: "* * * to 'aid' and 'abet' means to help, assist, or facilitate the commission of a crime, or to promote the accomplishment thereof, or to help in advancing or bringing it about; or to encourage, counsel or incite as to its commission." This instruction correctly defines the words.

 The court did not err in refusing to give to the jury appellants' requested instruction No. 12, defining the words "confession" and "admission". The documents were denominated "statements" in the Court's instructions, and not "confessions". Whether the statements of appellants were confessions or admissions, they were not harmed by the refusal of the court to define them. After they were in evidence, whether technically confessions or admissions, their probative value was for the jury to determine, and technical definitions would not have aided the jury in reaching a verdict.

 Requested instruction No. 13 was that defendant George Alfred Lord's statement be denominated an admission. But that defendant did not appeal, and under the instructions of the court his statement had no application to the appellants. If it was error the appellants cannot complain of it.

 Appellants' requested instruction No. 15 was to the effect that the jury should not consider the fact that the deceased had been robbed earlier in the evening by some or all of the defendants "as being evidence that such defendants participated in the killing"; that it was merely a circumstance which might be considered in arriving at a verdict.

The court did not err in refusing to give this instruction. The robbery was in fact evidence of defendants participating in the killing, though not conclusive within itself. Its proof established motive, if nothing more. But the two crimes were so connected, that it is quite safe to conclude

that the participants in the robbery killed the deceased to cover the crime of robbery.

The fourth assignment of error is "the court erred in admitting in evidence, and permitting the written statements of Delbert Lord and Walter Smith to be read to the jury."

The objection made in the district court is: "We object to the introduction of this alleged statement (that of appellant Lord) on the additional ground that it contains matter that has to do with a separate and distinct offense and has no bearing on the case now on trial." Thereafter the full confession of the appellant Lord was admitted in evidence, over this objection.

The confession of appellant Lord states in substance that he and his brother Alfred lived in Flint, Michigan; that "Alfred, Albert" and he went to Peck, Michigan, to rob their uncle; that they went to his home and appellant Lord ordered his uncle to "stick 'em up". His uncle laughed and started toward him, "So I shot". (His confession does not show with what effect he shot, but the record shows that he killed his uncle.) Alfred then "ties up" his uncle's wife, after which they carried his safe in the automobile to Flint, Michigan, and robbed it of $1300. After dividing the money, and having learned from newspaper reports that "Albert and Freddie had been arrested", he and Alfred left in an automobile and a week later arrived at San Antonio, Texas. After a week's sojourn in San Antonio they bought two saddles and went to El Paso, where they bought two horses, and left, with Phœnix, Arizona, as their destination. They stopped at Deming two days and became acquainted with the deceased. At Phœnix they met the defendants Smith and Powell, who told them "how many jobs they had pulled". They all went to El Paso and there agreed "to make a stick-up". They stole an automobile, and robbed a filling station, after "sticking the owner up" with a gun. That night they tried to "knock up something but could not", so decided to go to Deming, New Mexico, and rob the deceased. They left El Paso on a freight train and went to Deming, waited at the stockyards until night. Then they concealed themselves near deceased's filling station, while Alfred Lord went to entice deceased with his car to come to their place of concealment; in which, by a ruse, he succeeded. Suspecting that he had been tricked, deceased attempted to leave the car, when appellant Smith struck him in the head with a gun. He was then thrown into the back seat between two of the robbers, and his money demanded. He told them that his money was in his cabin, to which they returned and secured seven dollars. They threatened to shoot deceased if he did not produce money, which he said was in a trailer outside, but they refused to wait for him to secure it. He was forced back into the car; after which they started towards El Paso. The gasoline was exhausted after some hours travel, and they abandoned the car, and walked two and one-half miles, when Alfred Lord

ordered them to turn to the right. Leaving the road, they walked about five hundred feet to a ravine. While standing there and talking, Alfred Lord told appellant Lord "to let him have it". "I shot him once and my brother said 'make sure he is dead' and I shot him again; then we started walking for El Paso". They buried their bloody garments beside the railroad track and walked until morning, and ultimately arrived in El Paso, where they were "picked up" by the police, to whom Lord confessed the murder and described the location of the body of deceased.

■ It is a general rule that evidence of offenses and crimes other than that for which the defendant is on trial cannot be introduced, though such crimes are similar in nature; if in fact they are distinct crimes. The authorities are unanimous in so holding, and need not be cited.

We stated in State v. Bassett, 26 N.M. 476, 478, 194 P. 867, as follows: "The general rule is that when a man is put on trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of other offenses must be excluded. 8 R.C.L. title 'Criminal Law,' § 194; 16 C.J. title 'Criminal Law,' § 1132; 1 Bishop's New Cr.Proc. § 1120. The reasons which underlie this rule are apparent and require no elucidation. The rule is founded in a natural sense of fairness and justice with which all peoples governed by the principles of the common law view the matter. The rule, however, is subject to several important exceptions, commonly socalled. They are not really exceptions, but are part of the rule itself. ,Whenever the proof of another act or crime tends to prove the guilt of the person on trial, it is admissible, notwithstanding the consequences to the defendant. The state has the right to show the guilt of the defendant by any relevant fact. That that fact may be the commission of another crime is immaterial. The so-called exceptions to the general rule have been stated to be that where the proof of other acts or crimes tends to establish motive, intent, absence of a mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial, it is admissible."

■ Regarding the exceptions to the rule, we stated in State v. Starr, 24 N.M. 180, 173 P. 674, 676: "As pointed out in the Molineux Case [People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193], exceptions to the general rule referred to cannot be stated with categorical precision. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish: (1) Motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. * * *"

The Court of Appeals of Kentucky stated the exceptions as follows: "* * * Such general rule has been so often stated by this court, a citation of authority to sustain a statement of it should not be required of us. There are, however, certain exceptions to it, which allow the admission of evidence 'to establish (1) the identity; (2) motive; (3) intent; (4) guilty knowledge; (5) a plan, system, or scheme, of perpetrating crime; (6) to cover up a previous crime, or the evidence of the crime for which he is at the time being tried; (7) a crime, the proof of which is so interwoven as to be inseparable from the one for which he is being tried, that the evidence of the two acts cannot be separated.'" Jones v. Commonwealth, 250 Ky. 217, 62 S.W.2d 56, 57.

An example of the exception to the general rule is the robbery of the deceased. The evidence of this robbery tended to prove identity, motive, intent, guilty knowledge of Smith and that the murder was perpetrated to cover up the robbery. The two crimes were so interwoven that the evidence of the two acts cannot be separated.

The courts are not divided upon these abstract rules, but are in hopeless confusion in their application to particular facts. This is illustrated by the opinions in Lawrence v. State, 128 Tex.Cr.R. 416, 82 S.W.2d 647. The appellant in that case was on trial for murder; charged with killing a relative while shooting ducks on appellant's property. In addition to circumstantial evidence tending to prove the guilt of the appellant, testimony was admitted to the effect that he had shot at two men who were duck hunting on his premises the day before; that prior to this he had cursed, abused and threatened to kill others for shooting on his premises. In the original opinion by Judge Lattimore it was held that this testimony tended to connect defendant with the offense for which he was being tried and was properly admitted. On rehearing a majority of the court decided that it was not admissible, because the offenses were unconnected; but Judge Lattimore dissented and in an able opinion, which we believe to be sound, held that it was admissible on the question of the identity of the assailant. The reference here is to illustrate the confusion we find in the application of rules regarding which, in the abstract, there is no disagreement.

The admission of evidence of other similar crimes has been approved in cases where there was a general conspiracy to rob, and murder. Hillen v. People, 59 Colo. 280, 149 P. 250; Abshier v. People, 87 Colo. 507, 289 P. 1081; White v. State, 177 Ga. 115, 169 S.E. 499; Commonwealth v. Chalfa et al., 313 Pa. 175, 169 A. 564; People v. Wilson, 76 Cal.App. 688, 245 P. 781; State v. Carroll, 288 Mo. 392, 232 S.W. 699. But such evidence should be admitted only if it tends to prove the crime for which defendants are on trial. If it has no such tendency, it should be rejected notwithstanding the similarity of

the crimes, or the fact that they were numerous. State v. Bassett, 26 N.M. 476, 194 P. 867; State v. Buxton, 324 Mo. 78, 22 S.W.2d 635; Kesterson v. Commonwealth, 254 Ky. 287, 71 S.W.2d 622; Missouri v. State, 109 Tex.Cr.R. 193, 4 S.W.2d 68; Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077; Smith v. State, 52 Tex.Cr.R. 80, 105 S.W. 501. That it would have been error over a proper objection to admit that part of appellant Lord's confession detailing similar crimes in Michigan, and the theft of an automobile and robbery of a filling station in El Paso, Texas, there can be no doubt. By no stretch of the imagination can it be said that these crimes are within any exception to the general rule. The appellant Lord's statement did establish that he had committed a series of unrelated crimes; and appellant Smith's statement also showed him to be guilty of other unrelated offenses. But this could only prejudice the jury against them and add nothing toward proving their guilt of the crime for which they were on trial. State v. Fenley, 309 Mo. 534, 545, 275 S.W. 41, 44.

In discussing a similar case the Supreme Court of the United States stated:

"The principal assignments of error relate to the admission, against the objection of the defendants, of evidence as to several robberies committed prior to the day when Dansby was shot, and which, or some of which at least, had no necessary connection with, and did not in the slightest degree elucidate, the issue before the jury, namely, whether the defendants murdered John Dansby on the occasion of the conflict at the ferry. * * *

"But we are constrained to hold that the evidence as to the Brinson, Mode, and Hall robberies was inadmissible for the identification of the defendants, or for any other purpose whatever, and that the injury done the defendants in that regard was not cured by anything contained in the charge. Whether Standley robbed Brinson and Mode, and whether he and Boyd robbed Hall, were matters wholly apart from the inquiry as to the murder of Dansby. * * * Proof of them only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death. Upon a careful scrutiny of the record we are constrained to hold that, in at least the particulars to which we have adverted, those rules were not observed at the trial below. However depraved in character, and however full of crime their past lives may have been, the defendants were entitled to be tried upon competent evidence, and only for the offense charged." Boyd v. U. S., 142 U.S. 450, 12 S.Ct. 292, 294, 35 L.Ed. 1077.

Also the Court of Criminal Appeals of Texas said regarding a similar question:

"The court seemed to believe, from his qualification of the bill, that, if there was a conspiracy to burn houses, this would permit evidence of all the other cases of arson testified by Capers, on the theory of system. Where evidence of an extraneous kind is admitted, it must be to show intent to develop the res gestæ, identity of the defendant, or show system. That a party may, be systematically a thief, or destroyer of houses by burning, or in the participancy or execution of a crime, does not necessarily come within the exceptions above mentioned. To prove system in order to identify a party, or to show intent, is one thing, but to prove systematic crime, or that an accused is a confirmed violator of the law, is a very different proposition. And extraneous crimes are not admissible, even under the exception to the rule, unless the testimony comes within one of the exceptions, and this to connect the defendant with the crime for which he is being tried. This evidence does not come within these exceptions. The fact that other houses may have been burned and appellant may have participated in them does not of itself connect the defendant with the arson charged in the indictment under this record." Smith v. State, 52 Tex.Cr.R. 80, 105 S.W. 501.

 But notwithstanding this objectionable matter regarding other unrelated crimes in Michigan and Texas could have been excluded upon proper objection, no such objection was made. The question therefore was not presented to and ruled upon by the district court, and therefore cannot be considered here. In re Field's Estate, 40 N.M. 423, 60 P.2d 945; Thomas v. Johns, 35 N.M. 240, 294 P. 327.

The question presented here is whether the court erred in admitting *the whole confession in evidence* when opposed by the objection that a part only was not admissible. If appellant Lord had objected to the admission of that part of the confession regarding other crimes only, then the question of its admission would be governed by the rule we have quoted from State v. Bassett, supra.

 The appellant was entitled to have excluded from the jury only the inadmissible portion of the confession and not the whole of it. If a part of a writing is admissible in evidence and part not, an objection going to the admissibility of the whole writing is untenable. State v. Hernandez, 36 N.M. 35, 7 P.2d 930; State v. Moore, 42 N.M. 135, 76 P.2d 19; Atchison, T. & S. F. R. Co. v. Rodgers, 16 N.M. 120, 113 P. 805; Texas & Pacific R. Co. v. Coutouri, 2 Cir., 135 F. 465; Mock v. City of Muncie, 9 Ind.App. 536, 37 N.E. 281. The appellants attempted to correct the error by a request that the jury be instructed as follows: "In certain of the instruments in writing (the confessions and admissions of defendants) which have been admitted in evidence, there is reference to the commission of offenses outside the State of New Mexico, you are instructed that you should not consider such statements as to those offenses for any purpose in considering your verdict in this

case." The court refused to so instruct the jury, upon which error is predicated.

It is the rule that objections to testimony must be made when offered, if it is desired to have any question regarding its admission reviewed on appeal. Once improper testimony is admitted without objection (except under circumstances not appearing here), it is discretionary with the trial court to withdraw it from the consideration of the jury, but it is not error to refuse to do so. Speer v. State, 50 Tex.Cr.R. 273, 97 S.W. 469; Sweatt v. State, 156 Ala. 85, 47 So. 194; Harbour v. State, 140 Ala. 103, 108, 37 So. 330.

The question is settled by this court in State v. Alford, 26 N.M. 1, 187 P. 720. Improper evidence was admitted and thereafter a motion was made to exclude it from the consideration of the jury. The court held: "The error of the court in admitting this testimony, however, is not available to the defendant here. He sat by and allowed the testimony to be given without objection. After the testimony had been given he moved to strike it out, but at that time it was too late."

There is no difference in effect between a motion made during the trial to have testimony stricken and request for an instruction to the jury not to consider it. Each is a request to withdraw the testimony from the consideration of the jury.

The appellant Smith offered to prove by his counsel, J. B. Newell, that in a conversation Newell had with appellant Delbert Lord at the state penitentiary, that the latter had told him there was no common plan between the four defendants to commit the crime, and that Walter Smith had nothing to do with the killing.

The statement made by Mr. Newell, in tendering this testimony, is as follows: "Mr. Newell: I propose to testify that I asked this defendant at this time and place if there had been any common plan between the four of these boys to do that killing that night, and this man stated there was not. I then asked him if Walter Smith or Emmett Powell either one had a thing to do with the killing of this man, whereupon he represented that they had not. He said that he would testify to that any time that he may be a witness."

These facts could not be otherwise proven because the defendant who made this statement refused to testify. Objection was made that this testimony was hearsay. We think such declarations of a person other than the accused, made long after the commission of the crime and not a part of the res gestæ, are not admissible in evidence as an exception to the hearsay rule. This court so held in State v. Gonzales, 19 N.M. 467, 144 P. 1144. We quote from that case [page 1145]:

"In their motion for a new trial, appellants allege that since the rendition of the verdict they have learned that Jose La Riva had a conversation with one Jose Garcia, wherein the latter told the former that he (Jose Garcia) had fired the shots 'which the defendants were charged with having fired,' and that, if granted a new

trial, the defendants would prove that Jose Garcia fired the shots which defendants are charged with having fired. * * *

"On this branch of the case, it is sufficient to say that statements made by Garcia; to the effect that he fired the shots, could not have been properly admitted as evidence on the trial. It was only hearsay and inadmissible. Declarations of a party other than the defendant, which formed no part of the res gestæ, are not admissible in evidence in behalf of the defendant, although they may relate to the admission of the party that he committed the offense with which the defendant stands charged."

See annotations in 35 A.L.R. 441, where the cases on the question are collected.

 The fact that Lord was indicted jointly with the accused and was on trial with him, does not change the rule. People v. Raber, 168 Cal. 316, 143 P. 317.

Mr. Newell, attorney for the appellant Smith, called appellant Delbert Lord to the witness stand to testify regarding the conversation had in the penitentiary between Lord and Mr. Newell, to which reference has heretofore been made. The witness claimed his constitutional privilege not to testify. The following then occurred:

"Mr. Newell: If the court please, I don't care to transgress his constitutional privilege, but I do want to make a tender by questions propounded to the witness in the absence of the jury.

"The Court: I don't think he would be required to testify even in the absence of the Jury. If you want to make a record in this case come up to the desk.

"Mr. Newell: Then I will make a record before the Court. (Before the Court): I propose to show by the witness Delbert Lord that on the 24th day of May, 1937, I visited him in the penitentiary at Santa Fe, New Mexico; that I informed him that I had been employed as an attorney to represent Emmett Powell on this murder charge; that Walter Smith's people were in correspondence with me relative to employing me to represent him in the same case; that I would like to ask him a few questions concerning this murder case. I was then in the back office in the Penitentiary yard; the Warden of the Penitentiary, John B. McManus, and the Assistant, Mr. Brunk, were sitting at a desk some fifteen feet from where I talked to this witness, and they were not in a position to hear the conversation, and naturally made no attempt to hear it. I asked this defendant, Delbert Lord, whether on the night of this killing, or at any time there had ever been any pre-arranged plan or design upon the part of these four defendants to kill the deceased in this case; that he answered that there had been no such plan or arrangement. I then asked him 'Did Emmett Powell or Walter Smith either one have a thing to do with the actual shooting and killing of the deceased in this case,' to which he answered 'They did not.' He then said that he would testify to this fact in any trial if he were a witness therein.

"The Court: Objection to the tender will be sustained. The court might state if

that testimony could go in for any other reason it would certainly be objectionable from the standpoint of being hearsay; attempt to bring out some kind of proof to show by the witness that there was no plan, must be by direct testimony, and not what someone else might have said."

The tender was correctly refused by the court.

Without passing upon the question of whether it was the duty of the district court to require Lord to testify regarding all matters that would not incriminate him, the proof of that conversation was not proof of the matters stated in it. The tender was not testimony regarding whether there was any pre-arranged plan or design upon the part of the four defendants to kill the deceased, but whether Lord had such conversation with Mr. Newell. Clearly such testimony did not tend to prove any issue. It was not a question of whether there had been such conversation, which proved nothing material; but whether in fact there was a pre-arranged design to murder, which the conversation did not tend to prove.

The court instructed the jury that they could find one or more of the defendants guilty of murder in the first degree and find another or others guilty of murder in the second degree. This is assigned as error by appellant Smith, upon the theory that all of the defendants were guilty of the same crime, that is, murder in the first degree, if guilty at all.

Ch. 145, N.M.L.1925, is:

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished, as principals, and no additional facts need be alleged in any indictment or information against such accessory than are required in an indictment or information against his principal.

"An accessory to the commission of a felony may be prosecuted, tried and punished, though the principal felon be neither prosecuted and tried, and though the principal may have been acquitted." Sections 25, 26.

The indictment charged that the murder was committed by all of the defendants.

The question seems to be, whether under this statute, every person connected with the murder, whether principal or aider and abettor, must necessarily have been guilty of the same degree of murder. The statute does not say so. For instance, their participation in crime might have lacked the essential element of premeditation and deliberation that must exist before a homicide is murder in the first degree; whereas the principal may have long prepared himself to commit the murder and had deliberated over the matter sufficiently to make the crime murder in the first degree.

The guilt of an aider and abettor, or indeed any person taking part in murder, depends upon his own actions, intent and state of mind and not necessarily upon that of another. We quoted approvingly from Sec. 50 of Wharton on Homicide (3rd Ed.) in State v. Wilson, 39 N.M. 284, 46 P.2d 57, as follows [page 59]: "Where one was intentionally present for the purpose of aiding another, and knowingly assisted him, the conclusion is inevitable that the assistance was rendered knowingly, intentionally and with malice aforethought. * * * And the guilt of the aider and abetter is not wholly dependent upon that of the principal; and if he goes into an affray to assist another, without previous concert, and the person assisted kills his adversary, the amenability of the aider and abetter for the killing depends upon his own acts and intent, and not upon the intent of the other, entertained without his knowledge."

 It is contended that the court erred in giving instructions 13, 14 and 15, but we do not find in the record any objection to instructions 14 and 15; nor any request of appellants to give proper instructions on the same subject. It follows that no question regarding them was reserved for review in this court.

 Objection was made to instruction No. 13, but upon a specific ground not presented to this court. When specific grounds of objection are made to an instruction in the district court, and a ruling invoked thereon, only those grounds are available in this court as a basis for a review of the ruling.

The question here presented was not raised in, presented to, or passed upon by the district court, and therefore may not be reviewed by us. Thomas v. Johns, 35 N.M. 240, 294 P. 327.

It is assigned as error that the court permitted the jury to take the confessions and admissions of appellants to the jury room while deliberating upon a verdict.

 It was the rule at common law that no writings other than sealed instruments, could be taken by the jury while considering their verdict, except by consent of the parties, Higgins v. Los Angeles G. & E. Co., 159 Cal. 651, 115 P. 313, 34 L.R.A.,N.S., 717; State v. Raymond, 53 N.J.L. 260, 21 A. 328; 16 R.C.L. title "Jury," Sec. 112; but it is the general rule of modern practice, in the absence of a statute, that when the jury in a criminal case retires to deliberate on their verdict, they may take with them such books and papers as have been introduced in evidence, as the court in the exercise of a sound discretion may permit whether it be a writing or other exhibit, White v. Walker, 212 Iowa 1100, 237 N.W. 499; Talley v. State, 174 Ala. 101, 57 So. 445; McPhee v. Lawrence, 123 Me. 264, 122 A. 675; Higgins v. Los Angeles G. & E. Co., supra; State v. Payne, 199 Wis. 615, 227 N.W. 258; Annawan Mills v. Mangene, 237 Mass. 451, 130 N.E. 77; Krauss v. Cope, 180 Mass. 22, 61 N.E. 220; State v. Stover, 64 W.Va. 668, 63 S.E. 315; Sibley

v. Nason, 196 Mass. 125, 81 N.E. 887, 12 L.R.A.,N.S., 1173, 124 Am.St.Rep. 520, 12 Ann.Cas. 928; Dougherty Real Est. Co. v. Gast et al., St. Louis Court of Appeals, 95 S.W.2d 877; 61 C.J. title "Trial" Sec. 817; 16 R.C.L. title "Jury" Sec. 112; except in many jurisdictions, even in the absence of a statute, it is held to be error for the jury to have depositions in the jury room during their deliberations. Rawson v. Curtiss, 19 Ill. 456; Louisville, etc., R. Co. v. Morgan, 110 Ky. 740, 62 S.W. 736; Foster v. McO'Blenis et al., 18 Mo. 88; Holder v. State, 81 Tex.Cr.R. 194, 194 S. W. 162; Strickland v. State, 167 Ga. 452, 145 S.E. 879; Williams v. Watson, 207 Ky. 256, 268 S.W. 1067; White v. Walker, supra; 64 C.J. title "Trial" Sec. 818.

Sec. 105-2413, N.M.Sts.1929, is: "When the jury retires to consider its verdict it shall be allowed to take the pleadings in the cause, the instructions of the court, and any instruments of writing admitted as evidence, except depositions."

▉▉▉ This statute has been construed both by the territorial Supreme Court and this court. It does not change the general rule, except to make it mandatory upon the trial court to permit the jury to take to the jury room all "instruments of writing" except depositions.

The question in State v. Babcock, 22 N. M. 678, 167 P. 275, was whether the trial court erred in denying the defendant's request that the jury be permitted to take to the jury room maps and diagrams of the location and scene of the crime, that had been introduced in evidence. We stated [page 276]:

" * * * We appreciate that a map or diagram of the scene of the difficulty would not be a deposition, yet it is subject to all the infirmities of a deposition, and the same objections which would apply to the admission of a deposition would also apply to the map or diagram in the hands of the jury. In the case of Lytle v. Lytle, 37 Ind. 281, the Supreme Court said:

" 'Deeds, mortgages, bonds, written contracts, promissory notes, bills of exchange, etc., are written instruments. Judgments are in writing, but are not usually called written instruments.'

"Mr. Bishop in his New Criminal Procedure, vol. 1, § 982a, observes:

" 'The jury may take to their room, on retiring to determine their verdict, no books or papers, not even those used in evidence and commented on by counsel and the court, without the permission of the judge.'

"He concluded the paragraph in question by the statement that 'in some of the states, the questions are more or less adjusted by statutes.' We do not find, however, in our statute upon this subject an intention to broaden the rule further than we have observed, and we do not believe that a map or diagram of the character referred to, falls within a designation of 'instruments of writing' which our statute provides should be allowed to go to the jury. We therefore hold that there was no error in denying the request made by the attorney for

the defendant to let the jury, upon retiring for deliberation, take with them diagrams or maps, which had been used in the trial of the cause and offered in evidence."

We digress to say it may be doubted whether the statement regarding maps and diagrams in State v. Babcock, supra, that they are "subject to all the infirmities of a deposition, and the same objections which would apply to the admission of a deposition would also apply to the map or diagram in the hands of the jury," is correct. The reason for excluding depositions is that usually portions of them are excluded in the trial, and it would permit the jury to have the excluded evidence while deliberating; also that the jury must depend upon their memories for oral testimony and the same rule should apply to depositions. Neither of these reasons applies to maps, plats, diagrams and photographs. They are not depositions nor are they "written instruments" and therefore the general rule, and not the statute is controlling as to them. Whittaker v. State, 169 Miss. 517, 142 So. 474; Chitwood v. Philadelphia & R. Co., 266 Pa. 435, 109 A. 645; Colvin v. Commonwealth, 247 Ky. 480, 57 S.W.2d 487; McPhee v. Lawrence, supra; State v. Barwick, 89 S.C. 153, 71 S.E. 838; State v. McKinney, 174 La. 214, 140 So. 27.

We held in State v. Babcock, supra, that "instruments of writing," as used in the statute, had reference to such instruments as deeds, mortgages, bonds, contracts, notes, bills of exchange, etc., which are the subject of the action; and not merely written evidence. This must be so, as otherwise this mandatory statute would deprive the trial court of discretion to withhold from the jury room writings other than depositions, though unjust or unfair to send them.

The statute does not in terms provide that depositions shall not go to the jury room, but it is so construed in Territory v. Eagle, 15 N.M. 609, 110 P. 862, 30 L.R.A.,N.S., 391, Ann.Cas.1912C, 81, and State v. Babcock, supra; or at least, following the rule of decisions of the courts of a number of states, it was held in those cases that it was error for the court to permit depositions to go to the jury room.

Upon the assumption that a written dying declaration is to all intents and purposes a deposition, the Territorial Supreme Court held in Territory v. Eagle, supra, that it was error to permit the jury to have such evidence in the jury room, while considering their verdict. This is the conclusion of a number of courts. State v. Moody, 18 Wash. 165, 51 P. 356; Dunn v. People, 172 Ill. 582, 50 N.E. 137; Strickland v. State, 167 Ga. 452, 145 S.E. 879.

A deposition is defined as follows:

"The testimony of a witness reduced to writing, in due form of law, by virtue of a commission or other authority of a competent tribunal, or according to the provisions of some statute law, to be used on the trial of some question of fact in a court of justice." Bouvier's Law Dictionary (Century Ed.).

"Deposition, 'in its proper technical sense, is limited to the written testimony of a witness in the course of a judicial proceeding either at law or in equity.' Bouvier. It is, however, sometimes used, both in common parlance and legislative enactments as synonymous with 'affidavit' or 'oath,' and is thus defined by Webster. State v. Dayton, 23 N.J.L. (3 Zab.) 49, 54, 53 Am.Dec. 270." 2 Words and Phrases, First Series, p. 2002.

"The term 'deposition' is sometimes used both in common parlance and in legislative enactment as synonymous with 'affidavit' or 'oath;' but in its more technical and appropriate sense, the meaning of the word is limited to the written testimony of a witness given in the course of a judicial proceeding, either at law or in equity, in response to interrogatories either oral or written, and where an opportunity is given for cross-examination. A deposition is distinguished from an affidavit in that the latter is an ex parte statement drawn up in writing without any formal interrogation." 8 R.C.L. title "Depositions" Sec. 1.

" 'Deposition' is a generic expression which embraces all written evidence verified by oath, including affidavits. But as a word of legal terminology it is usually limited to the testimony of a witness, taken in writing, under oath or affirmation, before some judicial officer, in answer to interrogatories, oral or written. * * *" 18 C.J. title "Depositions" Sec. 1.

While in its primary sense the word "depositions" includes affidavits, in this statute it could have reference only to testimony that could be legally introduced in evidence and which comes within the definition of "depositions;" but a dying declaration may be oral, an unsigned writing or a signed writing under oath or not. The solemnity of the knowledge of impending death under which such declaration is made is held to be equivalent to the sanctity of an oath. An oath adds nothing to its admissibility. Then a dying declaration is not in fact a deposition; but every reason advanced by courts in support of the rule that depositions should not be in the possession of the jury while considering their verdict, applies to dying declarations; and these reasons are well stated in Dunn v. People, supra, as follows [page 138]:

" * * * Whether a writing introduced in evidence in a criminal case should be delivered to the jury to be consulted by them in the jury room, rests in the sound discretion and judgment of the court, and it is therefore not error to permit a jury to take a written statement, unless the reviewing court can say that such course was prejudicial to the defendant, and ought not, in the exercise of sound discretion and judgment, have been pursued. The written statement in question assimilated so nearly to a deposition that all of the reasons which have by text writers and courts been advanced in support of the view that depositions should not be taken by a jury in their retirement may well be invoked as reasons why this statement should not have been allowed to go into the jury room.

"* * * In the case at bar, dying declarations of the deceased, made on four occasions other than when the written statement was signed, were reproduced by witnesses for the state before the jury. The written statement was read in their hearing. They heard no evidence on the part of the plaintiff in error except such as was testified to by witnesses in their presence, and the testimony so produced in behalf of the plaintiff in error was in direct conflict with material portions of the dying declarations. To deliver the written statement to the jury so they might have it constantly before them during their deliberations, to operate on their sympathies as well as their memory, tended to give a manifest advantage to the people over the plaintiff in error, whose proof was but oral. No reason is suggested, nor is any perceived, why the one party should have thus been given an advantage over the other."

A confession has this in common with a dying declaration: it may be oral; or in writing, signed or not; and an oath adds nothing to its admissibility. It is therefore not a deposition. It is admissible in evidence because it is a statement or declaration against interest.

If the defendant denies the making of an alleged confession, or introduces testimony contradicting statements made in it, or if there is oral evidence before the jury of a contradictory character; then it would seem that the rules which preclude a dying declaration from going to the jury, should apply to a confession. In such case it would be a manifest disadvantage to a defendant for an alleged confession to be delivered to the jury for consideration by them during their retirement. It might, and probably would, operate on and prejudice them as against the oral testimony in conflict therewith regarding which they could not refresh their memories. Ordinarily it is error for the court to permit the jury to take confessions or admissions to their conference room while considering their verdict, though courts are divided on the question.

It was stated in State v. Castelli, 92 Conn. 58, 101 A. 476, 480: "It is also assigned as error that the confessions of the accused were admitted as exhibits and allowed to go to the jury room; the alleged wrong being that undue prominence was thus given to the most damaging portions of the testimony. There was no error in this. Writings made or subscribed by the accused are ordinarily admitted as exhibits. If these writings were harmful, it was not because any rule of procedure was violated, but because the accused had furnished harmful evidence against themselves."

It was held in State v. Doty, 94 Ohio St. 258, 113 N.E. 811, that the state had no right to demand that a signed confession be sent to the jury room, but whether it should be rests entirely within the sound discretion of the court. Also see Todd v. State, 93 Tex.Cr.R. 553, 248 S.W. 695; Commonwealth v. Murphy, 92 Pa.Super.

139; Holder v. State, 81 Tex.Cr.R. 194, 194 S.W. 162.

In State v. Kingsley, 137 Or. 305, 2 P.2d 3, 3 P.2d 113, there is an intimation that the admission of a confession in evidence is error; but in that case it was held not to be so, because the defendant testified to the same state of facts.

Regarding the same question, the Supreme Court of Illinois in People v. Spranger et al., 314 Ill. 602, 145 N.E. 706, said [page 710]: "The court permitted the jury to take Theodore's statement to the jury room with them upon their retirement to consider their verdict, overruling the defendants' objection. This was erroneous. It is error to permit the jury to take with them for consideration in the jury room depositions or dying declarations. * * * The same rule applies to confessions or other instruments of evidence depending for their value on the credibility of the maker."

It was held in State v. Crighton, 97 Mont. 387, 34 P.2d 511, that confessions are, to all intents and purposes, a deposition and should not go to the jury room.

■ We hold that it was error for the court to permit the jury to take the confessions and admissions introduced in evidence, to the jury room for their consideration in retirement. It remains to be determined whether this prejudiced any right of the appellants.

All of the record is not before us. The testimony for and against defendant Emmet Powell does not appear in the record, but it is stated in appellants' briefs:

"* * * While Powell's testimony (as a witness in his own behalf) is not in this record yet as I remember he testified that when the car ran out of gas and they all got out, that Smith had a gun in his hand according to his best recollection, but at the immediate scene of the shooting he did not know exactly who had the two guns. This would also be of great weight and perhaps be sufficient to warrant the jury in believing that Smith was an aider."

"* * * The testimony upon which the jury convicted these men of the various degrees of murder is here before the court. It is true, as I stated in my argument in the original brief upon this point, that the testimony of Powell is not in this record. I do give the substance of his testimony insofar as it is harmful to Smith; * * * The defendants in this case were convicted, we might say, solely upon the evidence contained in the various written statements by the various defendants; * * *"

■ We may assume then that it was on the confessions and admissions alone that the appellants were convicted. Appellants introduced no testimony, and therefore did not deny making the confessions and admissions in evidence, or deny the truth of the matters stated in them; nor is there any record of any testimony contradictory of them. While it was error to permit the confessions to go to the jury room, yet we are unable to see how the error could have harmed the appellants. The confessions were appellants' own statements, voluntarily made, with no evidence to contradict them. We have cited cases

decided by the Supreme Court of Illinois, holding it is error to permit the jury to take dying declarations or confessions to the jury room. In People v. Savant, 301 Ill. 225, 133 N.E. 775, it was held that a case would not be reversed because dying declarations were erroneously sent to the jury room, unless the defendant was harmed thereby. The court stated [page 778]: "The written declaration of deceased admitted in evidence in this case was competent in its entirety. It was very short, consisting of five lines as printed in the abstract. Oral testimony of witnesses before the jury as to the dying declaration was the same as the written statement. We are of opinion it was not within the sound discretion of the court to permit the written dying declaration to be taken by the jury to their room, and that it should not have been permitted; but, inasmuch as witnesses had testified orally to practically the same words of the dying declaration, it seems clear that defendant was not prejudiced by it, and the judgment should not be reversed on account of that action of the court."

In State v. Morrison, 121 Kan. 844, 250 P. 333, it was held that defendant was not prejudiced by the sending to the jury room of certain incriminatory letters written by him; that the error was harmless and the cause should not be reversed therefor. The Kansas court said [page 335]: "We regard the exhibits as being properly in evidence and unless the defendant was prejudiced by their being taken to the jury room he has no ground of complaint. We cannot presume that the defendant was prejudiced,

and, as no prejudice is shown, the complaint cannot be sustained."

It was stated in State v. Kingsley, 137 Or. 305, 2 P.2d 3, 4, 3 P.2d 113: "It is alleged that the court erred in sending to the jury room the written confession made by the defendant. This entire statement was read to the trial jury, it was commented upon by opposing counsel, and it was admitted into the record as evidence, not only without objection, but with the express consent of the defendant. Further, the defendant fully testified to the matter as set down in his written confession. By reason of these facts, error was not committed. In this connection, we direct attention to the case of State v. Hatcher, 29 Or. 309, 44 P. 584, where this court held that the erroneous ruling of the trial court in admitting into the record a preliminary statement made by the accused on a criminal prosecution for homicide is cured where the defendant subsequently testifies to the same state of facts set forth therein. In support of this view, there is an abundance of authority."

It is not clear whether the court held that it was error to send the confession to the jury room, or if under the circumstances it was harmless; but the latter seems to be indicated by the language used.

The appellants were not prejudiced by the error of the district court and the case should not be reversed because of it.

The ninth assignment of error is: "The court erred in giving instruction No. 16 because said instruction denominated the pleas of guilty before a preliminary magistrate as

'Confessions' whereas they were but 'Admissions.' "

We do not find that the district court denominated the pleas mentioned "Confessions" in paragraph 16 of the court's instructions. They were called "Statements" in every instance.

But see State v. Dena, 28 N.M. 479, 214 P. 583, wherein we said [page 585]: "The case, however, falls within a different class and is governed by a different rule. The second series of confessions, being those made before the committing magistrate during their preliminary hearing, were not extra judicial. On the contrary, they were judicial and upon which, without corroboration, a conviction may be sustained."

The evidence amply sustains the verdict of the jury.

The judgment of the district court should be affirmed, and it is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.