## Williams v. Watson.

(Decided February 10, 1925.)

### Appeal from Clark Circuit Court.

1. Compromise and Settlement—In Action to Enforce Compromise, Evidence should be Confined Strictly to Terms Thereof.—In suit to enforce compromise settlement, evidence should be confined strictly to terms of compromise.

2. Compromise and Settlement—Letter, though Written Some Months Before Compromise, Held Part Thereof, and Admissible in Action to Enforce.—Letter, though written some months before compromise finally became effective, but which contained offer ultimately accepted, held part of compromise agreement, and admissible in action to enforce it.

3. Appeal and Error—Permitting Three-Page Letter Containing Some Irrelevant Matter to be Read to Jury Held Not Prejudicial.— Court's action in permitting all of three-page letter to be read to jury, though it contained some irrelevant matter, held not error, where, on court's ruling that part of it might be read, complaining party had moved that all, if any, be read, and where irrelevant parts were not prejudicial to complaining party.

4. Trial—Jury should Not Ordinarily be Permitted to Take Papers to its Room for Consideration.—Under Civil Code of Practice, section 321, jury should not ordinarily be permitted to take papers to its room for consideration during deliberation.

5. Trial—Permitting Jury to Take Letters Composing Compromise Agreement to its Rooms for Consideration Held Not Abuse of Court's Discretion.—Under Civil Code of Practice, section 321, court has large discretion in matter of permitting jury to take papers introduced in evidence to jury room for consideration, and held, it was not abuse of discretion for court to permit jury to take to its room for consideration letters composing compromise agreement, in action to enforce such agreement.

B. R. JOUETT for appellant.

BENTON & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant Williams and appellee Watson, with one O'Rear, were engaged in taking and selling oil and gas leases and in the oil business generally in 1919-1920. In the consolidation of some of their oil companies the Alakyla Oil Company gave its note to appellee Watson for thirty thousand ($30,000.00) dollars. Appellant Williams was president of the corporation. Before it became due and while the business was active, Williams and others conceived the idea of consolidating the Alakyla company with another, or other companies, and in order to satisfy appellee Watson's thirty thousand ($30,000.00) dollar note, a block of stock was transferred by the company to appellant Williams with which he was to pay appellee Watson or for which he was to assume the obligation to Watson. Appellant and appellee had a number of business transactions involving leases, oil stocks, etc. They had, therefore, many settlements. The thirty thousand ($30,000.00) dollar note was not paid and Watson claiming that Williams had assumed its payment, was insisting upon a settlement in the summer of 1920. Some time in November or December following, the parties got together and compromised the claim of Watson against Williams. This is conceded by all concerned, but there is a difference as to the terms of the compromise. Appellee Watson claims that Williams agreed to pay him ten thousand ($10,000.00) dollars in cash, and to give him thirty thousand shares of stock in one of the oil companies in satisfaction of the thirty thousand ($30,-000.00) dollar note, and in pursuance to that agreement actually paid appellee Watson five thousand ($5,000.00) dollars, but he says that the other five thousand ($5,000.-

00) dollars has not been paid, and that is the amount involved in this litigation. Appellant Williams insists he compromised with appellee, Watson by agreeing to pay him five thousand ($5,000.00) dollars which he paid and by delivering to him thirty thousand shares of stock in the oil company, and that O'Rear, another party to the transaction, was to pay Watson five thousand ($5,000.00) dollars, making ten thousand ($10,000.00) dollars in cash, and thirty thousand shares of stock of which appellee Watson speaks, but that O'Rear has failed to pay the five thousand ($5,000.00) dollars which he assumed and promised to pay, hence appellee Watson's claim against Williams. He also says that Watson accepted notes from O'Rear for five thousand ($5,000.00) dollars which was O'Rear's part of the undertaking and which he agreed to assume in compromise of the claim and that he (Williams) has tendered to Watson the thirty thousand shares of stock, which was a full compliance with agreement of compromise. It is admitted by Watson that the stock has been tendered and that Williams has paid five thousand ($5,000.00) dollars on the compromise. Thus it will be seen that the evidence is conflicting. Watson testified in substance that Williams agreed and promised to pay him ten thousand ($10,000.00) dollars in cash, and to deliver him thirty thousand shares of stock and that Williams had failed and refused to pay five thousand ($5,000.00) dollars of the sum agreed upon; that O'Rear had nothing to do with the compromise; that he only accepted O'Rear's notes at the suggestion of Williams, after the compromise was made, with the understanding and agreement that Williams would cause the notes to be paid at a certain Irvine bank with which Williams was connected, without appellee Watson's endorsement, and that relying upon appellant's agreement to have the notes so paid he took them not in satisfaction of the debt, but with the hope of getting the money at the Williams bank in Irvine. In support of his evidence appellee Watson introduced a letter from Williams, written some months previous to the compromise but while it was pending, in which Williams said in relation to the thirty thousand ($30,000.00) dollar note held by Watson, "But I would like to settle this and lose what I have to lose and get it off my mind, and I am going to make you two propositions which I think are fair and right and better than most men would do. I will give you the balance of *my bank stock* or *I* will give you ten thousand

($10,000.00) dollars, and this thirty thousand shares of stock the company turned over to me to sell and get your money, and you see this is a *dead loss to me* of ten thousand dollars, as *I am giving you* the stock and *I think* this enough for *one friend to lose* trying to make another friend some money. I hope you will accept one or the other of these propositions, as *I am not willing* to do any more than this, and I think you are a reasonable man and will not ask more.''

This letter is not dated but there is no dispute about its genuineness, or that it relates to the subject matter of this compromise. Appellee Watson testified that after thinking the matter over for some time and conferring with Williams, he finally accepted the proposition stated in appellant's letter of ten thousand ($10,000.00) dollars and thirty thousand shares of stock, and that appellant at the time of the compromise agreed to pay appellee ten thousand ($10,000.00) dollars and to deliver to him the thirty thousand shares of stock.

Appellant Williams says he did not agree to pay the ten thousand ($10,000.00) dollars in cash but did agree to pay five thousand ($5,000.00) dollars, and O'Rear agreed to pay the other five thousand ($5,000.00) dollars, making ten thousand ($10,000.00) dollars. Appellant says O'Rear was present when the compromise was made and consented to the payment of $5,000.00 and gave his notes to appellee Watson as evidence of his undertaking, and that the notes were accepted by Watson, and appellant was fully discharged from further liability. This question of fact as to who was to pay the $10,000.00 was submitted to a jury by instructions which we think fairly presented the law of the case, and the jury found and returned a verdict reading:

''We, the jury, find for the plaintiff in the sum of five thousand ($5,000.00) dollars and interest, and thirty thousand (30,000) shares of Twin City Oil & Gas Company stock.''

Appellant complains that appellee Watson was allowed on the trial to introduce evidence of previous statements, understandings and letters which had been made and written prior to the compromise agreement of December, 1920, and that all such testimony was incompetent and should have been rejected at appellant's instance because the only question was as to what were

the terms of the compromise agreement. He also insists that in construing a compromise agreement the intention of the parties is to be determined from the contract itself and not from previous statements, understandings or agreements; that any testimony which operates to a recurrence of the original controversy which had been compromised, is incompetent and inadmissible. It is next insisted that the trial court committed reversible error in allowing the letters written by appellant Williams to be introduced by appellee Watson as evidence and read to the jury; and further in permitting the jury, after it had retired to its room for consideration of its verdict, to call for and take the letters to its jury room for consideration.

As the suit is only to enforce a compromise settlement the evidence should have been confined strictly to the terms of the compromise which were in dispute. We think, however, that the letter, a part of which we have quoted, and one or two others introduced by appellee Watson, were a part of the compromise although written some months before it was finally made effective. According to the evidence of appellee Watson he received the proposition of appellant Williams by letter, and after thinking it over for some time and conferring with Williams on different occasions concerning it, finally accepted the proposition made by Williams to pay him ten thousand ($10,000.00) dollars cash, and turn over to him thirty thousand shares of the capital stock in the oil company. Appellant Williams admits he made the proposition by letter. If, as testified to by Watson, he accepted the proposition of appellee Williams as made in the letter then the letter was competent as evidence, and the trial court did not err in admitting it for the jury's consideration. The letter, which contained three pages, of course had some irrelevant matter in it, but when appellant objected to its introduction the court overruled his objection and was about to allow only a part of the letter—relative matter—to be read to the jury, when appellant moved that all of the letter be read to the jury if any part was read, whereupon the court allowed the whole letter to be read to the jury. There was nothing in the letter, however, which was prejudicial to the rights of appellant.

The only other contention made by appellant which we need consider is the trial court's action in turning over to the jury to be carried to the jury room the letters

written by Williams to Watson concerning the compromise agreement and to which we have referred.  Ordinarily the jury should not be permitted to take papers to its room while considering its verdict.  By section 321 of the Civil Code it is provided:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court where the information required shall be given in the presence of, or after notice, to the parties or their counsel."

In the case of Louisville & Nashville R. R. Company v. Berry, 96 Ky. 604, we held that the jury might take to its room and have and use while considering its verdict a model produced at the trial to make the evidence understandable.  We also held in the case of C. & O. Ry. Co. v. Dupree, 23 R. 2349, that the jury may take to its room the pleadings in the case.

In the case of Watson's Exor. v. Watson, 137 Ky. 25, where a question similar to the one now under consideration arose, we said:

"It is better practice not to allow the jury to take papers to the jury room for examination after the case is submitted unless by consent of counsel. If the jury wish to examine any paper given in evidence, they should ordinarily be brought back into the court room and the examination had in the presence of the court and counsel.  It is not necessary for them to have any other paper than the court's instructions in the jury room.  We do not mean to hold that it would be cause for reversal if other papers were taken to the jury room.  The court has a discretion in such matters."

To the same effect is the case of Newport News & M. V. R. Co. v. Mendell, 34 S. W. 1081.

We adhere to the rule stated in the Watson case. The trial judge has a broad discretion in the matter of allowing the jury to take papers introduced in evidence, models and pleadings to the jury room while considering its verdict.  If this discretion be not abused the judgment will not be reversed on this ground.  A sound discretion was not abused.  There is a clear distinction be-

tween allowing letters, notes and other documentary evidence to go to the jury room and permitting the deposition of witnesses to be carried to the jury room and read by the jury while considering its verdict. Courts generally recognize this difference. L. H. & St. L. R. R. Co. v. Morgan, 110 Ky. 740. The reason for this rule, as stated in Thompson on Trials, 2nd edition, page 1859, "is that the witnesses who have been examined at the bar speak to the jury but once, whereas the witnesses whose testimony is embodied in the depositions, if the latter are allowed to be taken to the jury room and there read and reread by the jury, speak to the jury more than once. By this means testimony embodied in the depositions is likely to acquire undue weight in the minds of the jury; the party who is able thus to produce his testimony acquires an advantage over the party whose witnesses attend the trial; and a principle of public policy which favors the production of witnesses at the trial, where they must confront each other, the parties, the counsel, the court, the jury and the public, instead of allowing them to give their testimony in the privacy of a notary's office, is defeated." See also 16 R. C. L., pages 300 and 302; 38 Cyc., page 1828; Steele v. Swayne, 4 Ky. L. Rep. 721.

Finding no error to the prejudice of appellant's substantial rights the judgment is affirmed.