James F. THOMPSON, Appellant,

v.

James R. WALKER, Appellee
Cross-Appellant.

Court of Appeals of Kentucky.

April 14, 1978.

Norman R. Lemme, Pike, Lemme & Conway, Shepherdsville, for appellant.

Joseph R. Huddleston, Huddleston Brothers, Bowling Green, for appellee/cross-appellant.

Before HOWERTON, LESTER and WHITE, JJ.

HOWERTON, Judge.

On September 2, 1972, James Thompson, while driving his truck on the Kentucky Turnpike (now Interstate 65), collided into the back of James Walker's tractor trailer. Appellant's testimony was that as he approached the Shepherdsville toll booth, he applied his brakes, but they failed to work. He then attempted to down shift, but this was unsuccessful; and before he had a chance to do anything else, he ran into the back of appellee's truck.

Appellee brought suit against appellant for the recovery of damages because of permanent bodily injuries, physical and mental pain, diminution in earning power, lost wages and medical expenses. The jury found for the appellee and awarded him for medical expenses, lost earnings, and pain and suffering.

On appeal, appellant claims the trial court committed error by (1) not properly instructing the jury on sudden brake failure, (2) refusing to answer the jury's questions about the instructions, (3) permitting the jury to take a deposition into the jury room, (4) permitting the appellee to introduce evidence in his closing argument that had not previously been admitted, (5) permitting evidence of road conditions eight months after the accident, and (6) permitting the jury to take erroneously admitted written evidence into the jury room.

We need only decide appellant's first alleged error because we believe the trial court committed reversible error by failing to properly instruct the jury on the law of this case. The problem arose when, after the case had been submitted, the jury returned and asked the trial judge:

JUROR: Your Honor, we have come to a—I don't know if it's a problem on the law, but we have voted 9 to 3 that we don't think that the plaintiff's injuries, medical bills, and pain and suffering are caused from the collision. What do we do, as far as awarding him damages? Do we have to award him anything?

THE COURT: The law is fully stated in the instructions, and it will be your duty and responsibility to make your verdict from the law as it is given to you in the instructions. About all I can do is just suggest to you that you read them carefully, and study them, and do your best to follow them and reach a verdict.

JUROR: The way we read it and understand it, one contradicts the other.

THE COURT: Again, all I can say to you properly is that the instructions embody the law of the case, and it is your duty and your responsibility to do your best to read and try to understand the instructions and follow them. So I'll ask you to return unless you have something more, please go back to the jury room and deliberate.

The instructions were:

INSTR. # 1: It was the duty of the defendant, James F. Thompson, on occasion concerning which you have heard evidence, to exercise ordinary care to operate his truck so as not to collide with other vehicles, including the duty to have his truck under reasonable control, to drive at a speed no greater than was necessary and prudent under the conditions proven, to have his vehicle equipped with service brakes adequate to stop his vehicle whether or not loaded to capacity, when traveling 20 mph within a distance of 30 feet, to have his vehicle equipped with a hand brake adequate to stop his vehicle, whether or not loaded to capacity, within a distance of 55 feet.

If you find from the evidence that the Defendant Thompson failed to comply with any one or more of these duties, and

that such failure was a substantial factor in causing the accident, you will find a verdict for the plaintiff, and award him reasonable compensation for medical expenses, not to exceed $1,148.75, loss of earnings not to exceed $37,000.00, and pain and suffering not to exceed $50,000.00. Your total award not to exceed the sum of $88,148.75. *Unless you find for the plaintiff under this instruction, you will find for the defendant and be guided by the further instructions of the court.* (Emphasis added.)

INSTR. # 2: If you believe from the evidence that the brakes on defendant's truck suddenly failed; that the defendant exercised ordinary care to prevent such failure; that immediately after such failure the defendant acted as an ordinarily prudent person to prevent a collision with plaintiff's truck, and that such failure was the sole cause of such collision, you will find for the defendant, Thompson.

■ One possible reason for the confusing results was that the last sentence of Instruction # 1 tells the jurors that they are to find the defendant negligent if he didn't comply with the above duties, and only after finding him not negligent are the jurors to go to Instruction # 2, which is the sudden emergency excuse. This instruction is an incorrect statement of the law. Sudden brake failure is an excuse to negligence, not a defense. If the jury were to believe the appellant's brakes failed through no fault on his part, then he would not have been negligent. Therefore, an instruction which states that the jury is only to consider the sudden brake failure question if they do not find the defendant negligent is incorrect. The jury should consider the brake failure when determining whether the defendant was negligent, not after the question of his negligence has been established.

■ A proper instruction should include the sudden emergency theory within the instruction on negligence. See *Harris v. Thompson*, Ky., 497 S.W.2d 422 (1973). The reason for including the sudden emergency instruction within the negligence instruc-

tion is that the sudden emergency theory is not a defense to negligence, but is a modification or qualification upon the standard of care the motorist is required to exercise but for the emergency.

Because a new trial is required, comment should be made upon the other alleged errors which might arise during the new trial.

■ Appellant contends the trial court erred by refusing to comment upon the instructions when the jury requested information about the law. KRS 29.304 permits the court to comment upon the law when the jury so requests. Appellant has not cited any authority which makes it mandatory upon the court to inform the jury. We do not believe it is mandatory that the trial court explain or enlarge upon the instruction if it believes that the instructions are clear and self-explanatory. However, in the instant case, the jury told the trial court that they didn't think the plaintiff's injuries were caused by the collision. They then asked what they were supposed to do about awarding damages. The trial court told the jurors that the instructions were complete, and he could not say anything more about them. The problem was that the instructions were not clear on this point. The instructions state that if the defendant's negligence caused the accident, then the jury was to award the plaintiff for his injuries. It appears the jurors thought the defendant caused the accident, but may not have caused the injuries to the plaintiff. If the trial court had informed the jury that they could find the defendant had caused the accident, but not the injuries, as was done in *Lee v. Henderson*, Ky., 331 S.W.2d 884 (1960), some of the confusion might have been eliminated.

■ Next, appellant argues the trial court committed error by permitting the jury to take a deposition into the jury room. We agree that it is error for the trial court to allow a deposition to be taken into the jury room. See *Louisville H. and St. L. R. R. v. Morgan*, 110 Ky. 740, 62 S.W. 736 (1901), and *Williams v. Watson*, 207 Ky. 256, 268 S.W. 1067 (1925). However, the error is

not reversible unless the appellant can show that it prejudiced his right to a fair trial. Because we have reversed on the instructions, we need not determine whether such prejudice occurred. We suggest that at the new trial, the deposition not be given to the jury to be taken back to the jury room. If the jury wishes to be informed about the testimony in the deposition, the trial court should have the necessary parts of the deposition read to the jury in the courtroom before the parties.

■ The fourth alleged error complained of by appellant, was appellee's statement in his closing argument that Dr. Peterson had reported that appellee was unable to work. Appellant argues that this statement was improperly admitted because Dr. Peterson never testified. Dr. Peterson's report did .come into evidence indirectly through the testimony of Mr. Huie, who was Director of Loss Prevention for appellee's employer. It was not error for the trial court to allow the appellee to refer to the report in his closing argument because the report had been admitted into evidence, and appellant has not alleged that the report's admission was error.

■ Next, appellant complains that the trial court erred when it admitted evidence as to road conditions eight months after the accident. All that need be said is that testimony by a state policeman and the appellant affirm the testimony about the road conditions. Therefore, we believe the evidence was competent to prove the conditions at the time of the accident.

■ Finally, appellant argues that the trial court erred by allowing the jury to take with them into the jury room cards issued by the Interstate Commerce Commission showing that the appellee was physically qualified to drive. Apparently these cards contained some general information about appellee's physical condition before the accident, which was supported, at least to some extent, by medical testimony. Unfortunately, these cards are not contained in the appellate record for our examination of their specific contents. If the proper

oral testimony were offered in support of these cards, and if they were relevant to an issue in the case, then it would not be improper to allow the cards to be introduced as exhibits. The trial court has a great deal of discretion regarding introduction of evidence, and on the basis of the record before us, we are unable to say that he erred in this respect, nor can we say that it was error to permit these cards to be taken into the jury room during deliberations.

On cross-appeal, appellee claims the trial court erred by (1) excluding evidence about lost wages, and (2) refusing to instruct the jury about impairment to future earning power.

■ The trial court excluded evidence about what a co-employee of appellee had made during the period when appellee was not able to work full-time. We believe the trial court was correct in excluding this testimony as too speculative. Although the co-employee shared the same seniority position as the appellee, there was no assurance that the amount of work for both employees would have been the same. The trial court relied on the past wages of the appellee, taking inflation into account, as the best guide to lost wages.

■ Secondly, the trial court declined to give appellee's tendered instructions on his impaired future earning power. Evidence was introduced by Dr. Ritter that appellee had suffered permanent injury which would affect his ability to work. Although the testimony was mixed as to appellee's ability to work due to the injury, the jury could have found for the appellee from the evidence. Therefore, an instruction on impairment to future ability to work should have been given.

The judgment of the trial court is reversed.

All concur.