**Darrel Wayne SHELTON, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2011–CA–000282–MR.

Court of Appeals of Kentucky.

July 6, 2012.

Jeremy Ian Smith, Paducah, KY, for appellant.

Jack Conway, Attorney General of Kentucky, John Paul Varo, Assistant Attorney General, Frankfort, KY, for appellee.

Before DIXON, KELLER and NICKELL, Judges.

OPINION

KELLER, Judge:

Darrel Wayne Shelton appeals from a judgment of the McCracken Circuit Court,

convicting him of first-degree assault. He argues that the trial court abused its discretion in answering a question posed by the jury during its deliberations. Having reviewed the record, we affirm.

## FACTS

Shelton's conviction stemmed from an attack he made against David Feezor at the Veterans of Foreign Wars Post (VFW) in Paducah, Kentucky, on January 2, 2010. Feezor testified that he was at the VFW with two friends that evening, acting as their designated driver. At around 10:15 p.m., he went to the restroom. While Feezor stood at the urinal, Shelton approached him from behind and stabbed him twice in the back with a knife. A struggle followed in which Feezor was also cut under his chin, on his arm, and on his ear. Feezor was eventually able to knock Shelton from the restroom and call for help. Feezor testified that he had never spoken to Shelton before the attack, but that he had previously voted to bar him from the American Legion.

William Spinks, who was present at the VFW that night, testified that, a few minutes before the attack, Shelton told him that he was going to cut the throats of Feezor and another American Legion member who had voted to bar him from that organization.

In his defense, Shelton testified that he did not remember much of what happened that evening, as he had been drinking alcohol throughout the day and had also taken prescription medication. He testified that he thought Feezor was staring at him that night, and that Feezor reminded him of his father, who had been physically abusive towards him when he was a child. Shelton claimed that he thought he was defending himself against his father in the restroom. He denied making the incriminating statements to Spinks, and testified that he has been allowed to rejoin the American Legion.

The jury was instructed on assault in the first degree under both an intentional and wanton with extreme indifference theory. Kentucky Revised Statutes (KRS) 508.010(1)(a) and (b). The jury was also instructed on the lesser offenses of assault in the second degree and assault in the fourth degree and on the defenses of voluntary intoxication, extreme emotional disturbance, and imperfect self-defense. The instructions provide definitions of "intentionally" and "wantonly" that are taken directly from KRS 508.020(1) and (3). They state as follows:

> A person acts intentionally with respect to a result or to conduct when his conscious objective is to cause that result or to engage in that conduct.

> A person acts wantonly with respect to a result or to a circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. [A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.]

It is unclear why the last sentence was enclosed in brackets. After deliberating for almost three hours, the jury sent a note to the trial judge, posing the following question:

> We need clarification between intentional and wantonly. We are unclear with the definitions we have been giving [sic].

> "What does A person who creates such a risk but is unaware thereof solely by

reason of voluntary intoxication also acts wantonly with respect thereto."

The judge discussed the note with counsel for both parties, in the presence of the defendant. The judge stated that he believed the jury was asking the meaning of the bracketed language found at the end of the definition of "wantonly." The judge and the attorneys agreed that the bracketed language meant that voluntary intoxication is not a defense to wanton conduct. The judge described the language as "fairly difficult" and asked the parties if they had any objection to giving the jury further guidance. Defense counsel objected to providing any elaboration, and the Commonwealth was also hesitant to go beyond what was provided in the instructions. After some further discussion, the Commonwealth withdrew its objection. Defense counsel maintained his objection on the basis that the language provided in the definition was sufficiently clear, although he continued to agree that the court's interpretation of the language was correct.

The judge ordered the jury to return to the courtroom, and asked whether the note contained one question or two. The juror who wrote the note responded that the members of the jury were confused about the second part of the note, contained in quotation marks, that dealt with the meaning of "wanton." The judge responded as follows:

> Okay. And we've talked it over, and I can tell you that that language, what does a person—well, the language is, a "person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto." What that means is that voluntary intoxication is not a defense to wanton conduct. Does that answer your question?

The judge also sent a handwritten answer to the jury which simply stated "it means that voluntary intoxication is not a defense to wanton conduct."

The jury returned a verdict a few minutes later, finding Shelton guilty under the instruction modeled on KRS 508.010(1)(b), which states that a person is guilty of assault in the first degree when:

> Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

Shelton was sentenced to serve ten years in accordance with the recommendation of the jury. This appeal followed.

## STANDARD OF REVIEW

Under Kentucky Rules of Criminal Procedure (RCr) 9.54(1), the trial court has the duty "to instruct the jury in writing on the law of the case, which instructions shall be read to the jury prior to the closing summations of counsel." After the jury has retired for deliberations, "[n]o information requested by the jury or any juror ... shall be given except in open court in the presence of the defendant (unless the defendant is being tried in absentia) and the entire jury, and in the presence of or after reasonable notice to counsel for the parties." RCr 9.74.

 Furthermore, "[i]n the absence of something prejudicial in his remarks, the act of a trial judge in explaining or elaborating on the written instructions given to the jury does not warrant a reversal." *Young v. Commonwealth,* 421 S.W.2d 857, 859 (Ky.1967) (citations omitted). A trial court is permitted only to clarify a point of law, not to comment on the facts. *Muncy v. Commonwealth,* 132 S.W.3d 845, 848 (Ky.2004); *Thompson v. Walker,* 565 S.W.2d 172, 174 (Ky.App.1978) (The trial court has the discretion "to com-

## ANALYSIS

Shelton argues that the trial court abused its discretion in explaining the bracketed language in the jury instructions. He contends that the judge essentially misstated the law, and effectively coerced the jury into finding that Shelton's voluntary intoxication was caused solely by his intake of alcohol and not by the influence of the psychosis he suffered because of the victim's resemblance to his abusive father. He contends that, up until the point the jury asked for clarification, it believed his testimony about the deleterious effect of the combination of alcohol, medications, and memories of an abusive father. As support for this argument, he points to the fact that the jury was able to return a verdict within ten minutes after the trial court's clarification of the definition.

Shelton did not contemporaneously object to the actual content of the trial court's remarks and its interpretation of the law; he objected only to providing any clarification of the instructions to the jury. "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad,* 712 S.W.2d 947, 950 (Ky.1986). Thus, to the extent that his arguments relate to the content of the trial court's remarks, they will be reviewed pursuant to RCr 10.26 for palpable error. Shelton suggests that by omitting the word "solely" from its explanation, the trial court implied that Shelton's alleged psychosis, triggered by Feezor's resemblance to his abusive father, was similarly not a defense to wanton conduct. We disagree. A complete and correct instruction on extreme emotional disturbance was given to the jury; had the jury believed that Shelton was acting under the effect of such a psychosis, it could have found accordingly. There was nothing in the trial court's remarks to suggest that the alleged psychosis was not a defense to wanton conduct.

## CONCLUSION

For the foregoing reasons, we affirm the final judgment of the McCracken Circuit Court.

ALL CONCUR.